# NATIONAL LABOR RELATIONS BOARD *v.*
# DONNELLY GARMENT CO. ET AL.

Argued October 16, 1946.—Decided March 3, 1947.

*Ruth Weyand* argued the cause for the National Labor Relations Board. With her on the brief were *Solicitor General McGrath, Stanley M. Silverberg, Gerhard P. Van Arkel, Morris P. Glushien* and *Fannie M. Boyls.*

*Clif Langsdale* argued the cause for the International Ladies' Garment Workers' Union. With him on the brief was *Clyde Taylor.*

*Robert J. Ingraham* argued the cause for the Donnelly Garment Co., respondent. With him on the brief was *Burr S. Stottle.*

*Frank E. Tyler* argued the cause and filed a brief for the Donnelly Garment Workers' Union, respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

On March 6, 1940, the National Labor Relations Board, on finding that the Donnelly Garment Company had engaged in labor practices condemned as "unfair" by the

Wagner Act, issued an order against the Company "to effectuate the policies" of the Act. The Circuit Court of Appeals for the Eighth Circuit denied enforcement of the order and remanded the case to the Board. 123 F. 2d 215. After carrying out what it conceived to be the directions of the Court, the Board again found against the Company. The Court below denied enforcement of the Board's second order "for want of due process in the proceedings upon which the order is based." 151 F. 2d 854, 875. The correctness of this ruling is now before us, for we brought the case here, 327 U. S. 775, to rule on important issues in the administration of the Wagner Act. This protracted litigation has given rise to a swarm of questions. In view of the fact that the case comes to us after it has been twice before the Board and three times before the court below, on a record of thirteen volumes with a total of more than 5000 pages, even an earnest attempt at compactness cannot avoid a somewhat extended opinion.

The case presents limited legal phases of one of those bitter, unedifying conflicts with which American industrial history is unfortunately replete. For other litigation growing out of this strife, see 20 F. Supp. 767; 21 F. Supp. 807; 304 U. S. 243; 23 F. Supp. 998; 99 F. 2d 309; 119 F. 2d 892; 121 F. 2d 561; 47 F. Supp. 61; 47 F. Supp. 65; 47 F. Supp. 67; 55 F. Supp. 572; 55 F. Supp. 587; 147 F. 2d 246; 154 F. 2d 38. It has its roots in a campaign by the International Ladies' Garment Workers' Union (hereafter designated as International) to unionize the women's garment industry in Kansas City, Missouri. Because of its importance, the Donnelly Garment Company (to be called Company for short) became the particular target of these unionizing efforts. These continued with varying intensity over a period of years but met with little success among the Company's employees.

In 1938, International began proceedings before the Board charging the Company with a series of unfair labor practices in violation of § 8 (1), (2), (3) of the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. §§ 151 *et seq.* The main charge was that the Company, to counteract the efforts of International, had stimulated the formation of a plant union, the Donnelly Garment Workers' Union (hereafter called Union) and had dominated it through financial and other aid. Following the usual procedure there was a hearing before a trial examiner. At the hearing, the Examiner rejected an offer by the Company to prove, through the testimony of 1200 employees, that they had not been coerced by the Company to join Union, but that each of them had done so of his own free will, and that they had no knowledge of Company influence in the affairs of Union. The Examiner also excluded evidence to show that the formation of the Union followed strike threats and violence by International, successful against smaller competitors of the Company, to coerce the Company into a closed-shop agreement with International. To these and other less important exclusions the Company duly excepted on the submission of the Trial Examiner's intermediate report. The Board upheld the Examiner's rulings on evidence, accepted his findings of fact, and, with a qualification not here relevant, adopted his recommendations. Thereupon it issued the usual cease-and-desist order, and directed the disestablishment of Union and reimbursement to employees of the amount of the dues which the Company had checked off on behalf of Union (21 N. L. R. B. 164).

Review of this order came before the Circuit Court of Appeals on the Company's petition to set it aside and on the Board's cross-petition for its enforcement. On several contentions, the disposition of which is relevant to

the questions now calling for decision, the Court sustained the Board. It found no basis for setting aside the proceedings as unfair on the claim that either the Examiner or the Board was biased. It held that the Board properly limited the evidence to issues raised by the complaint, and since International was not on trial it found no impropriety in the exclusion of evidence offered to prove its misconduct. The Court did however find that the Company had been denied a fair hearing in not being allowed to present the testimony of its employees to the effect that Union was truly independent and that they had joined it voluntarily. The Court remanded the case to the Board "for further proceedings not inconsistent with the opinion of this Court."

The Board thereupon set the case for a second hearing before the original Examiner. Insisting that he was biased and had prejudged as valueless "the evidence to be adduced at the pending hearing," the Company moved for a new trial examiner. The Board denied the application and the case proceeded to hearing. This time the Examiner heard eleven of the 1200 employees named in the offer of proof rejected in the earlier proceeding, but declined to hear the rest on the ground that their testimony would be merely cumulative. He allowed the President of the Company, whom illness had kept from the earlier hearing, to testify fully. Otherwise, he received no evidence that had been available but was not offered at the earlier proceeding, and excluded all evidence of events subsequent to the termination of the first hearing. The Examiner's findings and recommendations, in respects here material, were substantially the same as those he had previously made, and the Board, acting upon his intermediate report, issued virtually the same order. 50 N. L. R. B. 241. The Company again petitioned the Circuit Court of Appeals to set aside the order, and the Board again requested its enforcement.

During the pendency of these proceedings, the Company invoked § 10 (e) of the Wagner Act and asked the Court leave to adduce before the Board evidence which it claimed had been erroneously excluded. This motion was not granted. Instead, as already noted, the Court denied the Board's petition for enforcement "for want of due process in the proceedings upon which the order is based." 151 F. 2d 854, 875. The Court set forth its views in a careful opinion of more than thirty pages in the printed record. There was also a concurring opinion, and a dissent.

The Court canvassed many items of evidence. As to some of the Board's rulings which it disapproved, the Court stated explicitly that by themselves they would not have afforded sufficient ground for reversal. Rulings which individually would not invalidate an order of the Board do not in combination acquire the necessary strength to undo what the Board, acting under authority given it by Congress, has done. We do not find that in their combination these rulings amounted to unfairness. We must therefore consider one by one those objections which the Court deemed sufficient to vitiate the Board's order. For the Court below did not suggest that the Board as a tribunal was so biased as to be incapable of fair judgment in this case. It found that such a finding against the Board was not justified.

*First.* The controlling basis of the Court's finding of unfairness in the Board proceedings related to testimony proffered by the Company at the second hearing before the Examiner. This second hearing was not a new proceeding. It was a stage in a process consisting of the first proceeding before the Board, the remand resulting from review of the Board's order in the Circuit Court of Appeals, and the second proceeding before the Board in response to this remand. The correctness of the Court's judgment refusing enforcement of the Board's

second order must be judged in the light of the interrelation of the two proceedings before the Board, and the Board's justifiable interpretation of the directions which it received upon remand of the first order. Indeed, the disposition of the present case turns decisively on the view that is taken of the Board's interpretation of its duty under the Court's mandate.

It becomes necessary therefore to revert to the precise terms of the Court's mandate. The order was remanded by the Circuit Court of Appeals "to said Labor Board for further proceedings not inconsistent with the opinion of this Court." The Court's opinion yields this gloss upon its mandate:

> "Our conclusion is that the petition of the Board for enforcement of the order under review must be denied. We think that the least that the Board can do, in order to cure the defects in its procedure caused by the failure of the Trial Examiner to receive admissible evidence, is to vacate the order and the findings and conclusions upon which it is based; to accord to the petitioners [the Company and the plant union] an opportunity to introduce all of the competent and material evidence which was rejected by the Trial Examiner; and to receive and consider such evidence together with all other competent and material evidence in the record before making new findings and a new order." 123 F. 2d 215, 225.

The Board based its new order upon the record of the first proceeding, reopening the hearing only for the purpose of admitting the erroneously excluded testimony of the employees. In short, the Board did not understand the remand to call for a new trial. The Court, when called upon to construe it four years later, took a different view of the meaning of its decision of November, 1941: "It is, we think, apparent that what this Court, in effect,

ruled was that the Company and the plant union were entitled to a new trial upon the evidence already taken and such competent and material evidence as might be proffered upon a further hearing." 151 F. 2d 854, 856. From this point of view, the Court could readily conclude that the record which came to it "presents an incomplete picture."

We have recognized that "the court that issues a mandate is normally the best judge of its content, on the general theory that the author of a document is ordinarily the authoritative interpreter of its purposes." But, we continued, "it is not even true that a lower court's interpretation of its mandate is controlling here. Compare *United States* v. *Morgan*, 307 U. S. 183. Therefore, we would not be foreclosed by the interpretation which the Court of Appeals gave to its mandate, even if it had been directed to a lower court." *Federal Communications Comm'n* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 141. Here, as in that case, a much deeper issue is involved. As we had occasion to point out in the *Pottsville* case, there are significant differences between the relations of an appellate court to a lower court and those of a court to a law-enforcing agency, like the Board, whose order is subject only to restricted judicial review. These differences may be particularly telling upon remand of an order to the agency. Due regard for these differences must guide us through the maze of details in this case.

In the context of the opinion remanding the Board's original order and of the nature of the administrative process with which it is entrusted, the Board was justified in not deeming itself under duty to grant a "new trial" in the sense in which a lower court must start anew when an upper court directs such a new trial. There was no reference to a "new trial," nor was any intimation given that such was the breadth of what the remand re-

quired. From the Court's opinion there appears only a very restricted dissatisfaction with the original proceedings before the Board, calling for a correspondingly restricted correction. "The least that the Board can do," wrote the court, "is . . . to accord to the petitioners an opportunity to introduce all of the competent and material evidence which was rejected by the Trial Examiner; and to receive and consider such evidence together with all other competent and material evidence in the record before making new findings and a new order." 123 F. 2d at 225. "The least that the Board can do" may well imply that the Board is authorized to draw on the wide scope of its statutory discretion. But to advise the Board of "the least that [it] can do" does not put the Board in default for not doing more. Due process does not afford a party the right to treat as a rehearsal a hearing on the issues for which the hearing was adequate. And the Wagner Act does not require that ground be covered a second time or piecemeal.

*Second.* Since in our view the remand did not call for a proceeding *de novo,* the Board was not required to reopen any issue as to which its ruling was left unassailed by the Circuit Court of Appeals in its first decision. We shall therefore consider the particular defects which the Circuit Court of Appeals found in the second hearing, by treating that hearing not as a new trial but as the sequel of the first hearing under a remand by the Circuit Court of Appeals for the limited purpose of correcting the prior erroneous exclusion of testimony.

(1) The Board's decision that the Company had engaged in unfair labor practices to a large extent turned on the Company's relation to the plant union. It is fair to infer that the lower court's denial of enforcement of the Board's order was influenced most by its finding that the Trial Examiner and the Board did not comply with the Court's mandate on the first review regarding the

proffer of testimony of the Company's employees to the effect that they voluntarily organized and joined the Union and that, to their knowledge, its affairs were uninfluenced by the Company. At the second hearing the Examiner admitted the testimony of eleven such employees, excluding further oral testimony of the same nature as merely cumulative. The court below did not quarrel with confining this line of testimony to eleven witnesses. But it reached the view that neither the Examiner nor the Board took this testimony into account in reaching the findings on which the Board's second order was based. It was principally from this that the Court concluded that the Company was denied the full hearing to secure which the case was remanded to the Board.

According to an early English judge, "The devil himself knoweth not the mind of man," and a modern reviewing court is not much better equipped to lay bare unexposed mental processes. It is a grave responsibility to conclude that in admitting the testimony of the Company's employees, the Board went through a mere pretense of obedience to the Court's direction, and heard the testimony with a deaf ear and a closed mind. In light of the authority with which Congress has endowed the Board, and with due regard to the conscientiousness which we must attribute to another branch of the Government, we cannot reject its explicit avowal that it did take into account evidence which it should have considered unless an examination of the whole record puts its acceptance beyond reason. Since this matter is crucial, it is appropriate to quote fully the Board's decision on the point:

> "In remanding the case to the Board for further hearing, the Circuit Court directed that the respondent [the Company] and the D. G. W. U. [the plant union] be permitted to adduce the previously proffered testimony of respondent's [the Company's] employees to show, in substance, that they formed

and joined the D. G. W. U. of their own free will and that they were not influenced, interfered with, or coerced by the respondent in choosing that organization as their bargaining representative. In compliance with the Court's mandate and pursuant to the respective offers of proof submitted by the respondent and the D. G. W. U. at the original hearing, the Board permitted the introduction of such testimony. We have carefully considered all such evidence adduced by the respondent and the D. G. W. U. We find, however, that the testimony in question does not overcome more positive evidence in the record that the respondent committed acts of interference and assistance in the formation and administration of the D. G. W. U. which subjected that organization to the respondent's domination and which removed from the employees' selection of the D. G. W. U. the complete freedom of choice which the Act contemplates. Since we find the testimony here adduced totally unpersuasive that the employees voluntarily designated the D. G. W. U., we are moreover impelled to adhere to the opinion, derived from our experience in administration of the Act, that conclusionary evidence of this nature is immaterial to issues such as those presented in this case. A consideration of all the evidence convinces us, and we find, that the respondent dominated and interfered with the formation and administration of the D. G. W. U. and contributed support thereto; and that the respondent thereby interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act." 50 N. L. R. B. 241.

We cannot read this otherwise than as an assurance by the Board that it did not merely go through the motions of allowing the testimony of these witnesses to get into the record as an empty formality, but that it duly heeded the

order of the Court and reflected upon the testimony. The Board judged of its worth, as it had a right to, in light of the mass of other testimony in the case, and found it unpersuasive. Had the Board said no more the court below could hardly have found disregard of its mandate. The Board's skeptical expression regarding this kind of testimony hardly disproves obedience to the Court's mandate. Even lower courts sometime indicate disagreement with a ruling they are bound to enforce. Out of repeated instances of hearing the same thing a generalization as to its worth will almost inevitably emerge in the thoughts of a tribunal. As to this sort of testimony, it has been observed that a feeling by employees "that they were under no sense of constraint . . . is a subtle thing, and the recognition of constraint may call for a high degree of introspective perception." Judge Magruder in *Bethlehem Shipbuilding Corp.* v. *National Labor Relations Board,* 114 F. 2d 930, 937. We are not called upon to lay down a general rule of materiality regarding such testimony. Suffice it to say that the Board obeyed the decision of the Circuit Court of Appeals that the testimony of the Company's employees regarding Union was to be adduced and considered. Its probative value was for the Board. See *Pittsburgh Plate Glass Co.* v. *National Labor Relations Board,* 313 U. S. 146, 163. And the Court did not rule that the rest of the record repelled the Board's assurance that it "carefully considered" the evidence the Court bade it to consider. It expressly withheld consideration of the Board's order on the basis of the whole record.

(2) The new testimony of the Donnelly employees led to rulings on evidence by the Examiner, approved by the Board, which in the view of the Court below contributed to render the hearing unfair. The testimony related to the offensive aspect of International's unionizing efforts and the bearing of this upon the claim of Company that Union was quite independent and not the Company's

instrument. The employees were allowed to testify that they were antagonized by acts of violence on the part of International and that they sought self-protection in a union of their own, voluntarily formed. The Examiner limited this line of testimony to acts of violence within six months preceding the organization of Union. This was based on the notion that a time limit had to be drawn somewhere in ascertaining the effect of known violence in persuading Donnelly employees to form their own union, and that a period longer than six months was too remote, or, in any event, had not sufficient probative value. Surely this was a reasonable ruling by the hearing-tribunal. At any rate it was not so circumscribing of proof in establishing the issue toward which the evidence was directed as to call for correction. But it is urged that while the Company was so restricted on proof of this issue the Board allowed evidence further back calculated to show a continuous state of mind toward influencing employee association by the Company. By way of rebuttal to the employees' testimony that the plant union of 1937 was a spontaneous effort of the employees wholly uninfluenced by the Company, the Board admitted evidence to show that the Company fostered a company union in 1935. It does not follow that the limitation of time on admissible evidence is the same regardless of the issue for which the evidence is tendered. Certainly we cannot say that it was not admissible to allow this evidence of company coercion in 1935 as bearing on the independence of the new plant union in 1937. And so we cannot find a solid enough ground to establish discriminatory treatment by the Board because on this issue it went back to 1935 whereas on the issue of the influence of International's violence in the formation of the 1937 plant union, it drew the line at events six months prior thereto.

(3) While we think that the Board properly construed the scope of the remand not to require a retrial of issues canvassed at the first hearing, time does not stop still even for the administrative process. Change in circumstances may make relevant at the second hearing what was irrelevant at the first hearing. The Circuit Court of Appeals found such a change in circumstances in a decision of this Court rendered after the first review below. In its decision of November 6, 1941, the Circuit Court of Appeals sustained the exclusion by the Board of testimony to prove misdeeds by International. The tenor of its reasoning was that an inquiry into charges of unfair labor practices by the Company did not make relevant charges of misconduct against International, the complainant. The Board issued the order now challenged on June 9, 1943. In the meantime, on January 18, 1943, this Court decided *National Labor Relations Board* v. *Indiana & Michigan Electric Co., 318 U. S. 9.* That case, so the court below thought, required the admission at the second hearing of the offer of proof regarding International's acts of violence.

We regard this as a misapplication of the *Indiana & Michigan* case. This case is not that case. They have in common an accusation of grave misconduct against a complainant before the Board. Otherwise, the circumstances of the two cases, and the legal issues they raise, are very different. The *Indiana & Michigan* case involved a proceeding under § 10 (e) of the National Labor Relations Act authorizing the Circuit Court of Appeals to order additional evidence to be taken before the Board when it is shown "to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence" at the hearing. We had previously held that such an application "was addressed to the sound judicial dis-

cretion of the court." *Southport Petroleum Co.* v. *Labor Board,* 315 U. S. 100, 104. Section 10 (e) in effect formulates a familiar principle regarding newly discovered evidence. Even without such explicitness this Court has, on occasion, not allowed administrative orders to stand where there has been a drastic change in circumstances. In *Indiana & Michigan* the offer of proof related to events subsequent to the Board's hearing, tending to show acts of serious violence on behalf of a complaining union. The Board had refused to reopen the case and the Circuit Court of Appeals for the Sixth Circuit granted the application under § 10 (e). We held that, in the light of the circumstances before it, the Circuit Court of Appeals did not abuse its discretion in ordering additional evidence to be taken before the Board. The proffered testimony was held relevant on three grounds: (1) Inasmuch as the Board, by the very nature of its case load, must exercise discretion in entertaining complaints, the newly revealed misconduct on the part of the complainant might affect, not the jurisdiction of the Board, but the exercise of its power to entertain a charge; (2) the new evidence bore materially upon the credibility of some important witnesses before the Board; (3) the Board had attributed to the Company responsibility for the conduct of some of its supervisory employees, and the new evidence might lead the Board to conclude that their conduct was to be attributed to self-interest and not charged against the employer.

Here we have a totally different situation. We are not reviewing an allowable exercise of judicial discretion by the Circuit Court of Appeals in ordering the Board to hear newly discovered evidence. On review of its order, the Board cannot be compelled to admit evidence which it excluded unless such exclusion was clearly insupportable. The power to adduce additional evidence granted

to the Circuit Court of Appeals by § 10 (e) cannot be employed to enlarge the statutory scope of judicial review. The short of the matter is that the Court deemed it reversible error on the part of the Board not to entertain testimony on a matter which the court deemed irrelevant to the issues at the first hearing. It did so because it interpreted the *Indiana & Michigan* case to hold that failure by the Board to allow a full-dress inquiry into the misconduct of a complainant, particularly if very serious, renders the proceedings unfair as a matter of law. We were not dealing with such an abstraction in the *Indiana & Michigan* case. Nothing short of such an abstraction will justify invalidation of the order in this case because the Board did not deal with the charges against International as a separate issue, or as though the International had been on trial. The only consideration affecting the behavior of a complainant that played a part in the decision in *Indiana & Michigan* and which may here be invoked, is the suggestion that the character of a complainant may rightfully influence the Board in entertaining a complaint. But the charges against International had in fact been brought to the attention of the Board even though not in the way in which International would have been tried had it been formally charged with crime. It would be unreal to deny that there was plenty of evidence in the record to apprise the Board of alleged misconduct by International if on that score it chose not to entertain charges of unfair labor practices against the company. In the light of the Board's opinion, it would be doctrinaire to assume that it would have reached any other result if evidence of International's misconduct had been more voluminous. *Pittsburgh Plate Glass Co.* v. *National Labor Relations Board, supra.* The two other respects in which newly discovered evidence as to violence was ordered to be heard in the *Indiana & Michigan* case are

completely lacking here. Here we have not new evidence material to the credibility of important witnesses or relevant in assessing the responsibility by an employer for conduct of supervisory employees. The refusal of the Board in effect to try International did not impair the validity of the Board's order.

Even in judicial trials, the whole tendency is to leave rulings as to the illuminating relevance of testimony largely to the discretion of the trial court that hears the evidence. See, *e. g.,* Morgan, Foreword, American Law Institute Code of Evidence, p. 15. Courts of appeal are less and less inclined to base error on such rulings. Administrative tribunals are given even freer scope in the application of the conventional rules of evidence. See *Tagg Bros.* v. *United States,* 280 U. S. 420, 442. It is significant that the Wagner Act specifically provided that "the rules of evidence prevailing in courts of law or equity shall not be controlling." § 10 (b).

*Third.* This brings us to the only other objection to a ruling of the Board made after the first hearing. On the first review, the court below rejected the Company's contention that the Examiner was biased. 123 F. 2d at 219. On the second review, the Court was of opinion that the Board improperly denied the Company's application for a new Examiner. It did so, apparently, not because it found actual bias on the part of the Examiner demonstrated at either hearing. The Court seemed to be moved by the generous feeling that a party ought not to be put to trial before an examiner who, by reason of his prior rulings and findings, may not be capable of exercising impartiality. Certainly it is not the rule of judicial administration that, statutory requirements apart, see Judicial Code § 21, 28 U. S. C. § 25, a judge is disqualified from sitting in a retrial because he was reversed on earlier rulings. We find no warrant for impos-

ing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing. The Board might have gone beyond the legal compulsions and ordered the new evidence to be heard before a new Examiner who could report with a mind wholly free from prior litigious embroilments. The Board might have been well advised also to allow greater leeway in admitting evidence not strictly relevant. It takes time to avoid even the appearance of grievances. But it is time well spent, even though it is not easy to satisfy interested parties, and defeated litigants, no matter how fairly treated, do not always have the feeling that they have received justice. In any event, we are not the advisers of these agencies. And we have no right to upset their orders unless they fall afoul of legal requirements. *Cf. Inland Empire Council* v. *Millis,* 325 U. S. 697. We do not find that the Board's order offends them.

*Fourth.* We have examined all the issues pressed here but we need not enlarge upon our conclusion that they are without merit. There remains the proper disposition of the case. Having found infirmities in the proceedings which led to the order, the Court below did not consider the sufficiency of the evidence to sustain the findings on which the order was based. This controversy has been so long in litigation that, other things being equal, it would be highly desirable finally to dispose of the whole case here. But other things are not equal. It is not the function of this Court to review in the first instance the sufficiency of evidence on which the Board's order is based. Congress placed that function in the Circuit Court of Appeals. And this case is peculiarly not one in which we should do the unusual thing and pass on evidence without its prior consideration by the lower court. It is not for us to make an independent examination of this entire record. The de-

238

mands of the work of this Court preclude an independent canvass of a record of thirteen volumes, containing more than 5000 pages. Two judges below who had gone over this mass of evidence reached opposite conclusions regarding its sufficiency to support the Board's findings. For the determination of this issue we remand the case to the Circuit Court of Appeals.

*Reversed and remanded.*