**NATIONAL LABOR RELATIONS BOARD
v. MINNESOTA MINING & MANU-
FACTURING CO.**

No. 14013.

United States Court of Appeals
Eighth Circuit.

Jan. 16, 1950.

Fannie M. Boyls, Attorney, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, and Thomas J. McDermott, Attorney, National Labor Relations Board, Washington, D. C. on the brief), for petitioner.

Robert H. Tucker, St. Paul, Minn. (Connolly, Tucker & Post, St. Paul, Minn., on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The National Labor Relations Board, upon findings that the respondent had engaged in unfair labor practices in violation of Section 8(a) (1) and 8(a) (3) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., as amended by the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., on February 10, 1949, ordered the respondent to cease and desist from such practices, to reinstate and reimburse for loss of pay Robert Ball and Fred Boyd, two of its employees whom the Board found had been discriminatorily laid off, and to post the usual notices of compliance. 81 N. L.R.B. 557. The order, which also set aside an election held on March 17, 1948, at the respondent's plant in Little Rock, Arkansas, in connection with a representation proceeding, is in conventional form. The Board, pursuant to Section 10(e) of the Act, has petitioned this Court for enforcement of the order. In its answer to the petition, the respondent asserts, in effect, that the findings and order of the Board are not supported by substantial evidence, and asks that the order, or so much of it as may be determined to be invalid, be set aside.

This controversy grows out of an attempt by the United Gas, Coke and Chemical Workers of America, C.I.O. (herein called the Union), to unionize the employees at the manufacturing plant of the respondent at Little Rock, Arkansas. The plant commenced operations on April 23, 1947. The organizational campaign of the Union commenced shortly thereafter. On June 23, 1947, the Union petitioned the National Labor Relations Board for certification as the collective bargaining representative of the employees. The Board ordered an election to ascertain whether a majority of the employees at the plant wished to be represented by the Union. The election was held on March 17, 1948. The Union lost by a vote of 64 to 49. On March 22, 1948, it filed objections to the conduct of the election, alleging that respondent had interfered with the freedom of choice of its employees. After an in-

vestigation, the Regional Director of the Board issued his report, in which he recommended that the Board sustain the objections of the Union and set the election aside and call a new election. The respondent filed exceptions to this report. On June 15, 1948, the Board ordered a hearing on the Union's objections to the conduct of the election.

The Union, on June 30, 1948, filed an "amended charge," asserting that the respondent had, by specified unfair labor practices within the meaning of Section 8(a) (1) of the National Labor Relations Act as amended, interfered with, restrained and coerced its employees in the exercise of their rights to self-organization, and had, in violation of Section 8(a) (3) of the Act, discriminatorily terminated the employment of four employees, including Robert Ball and Fred Boyd. The Board on that date issued its complaint, based upon the "amended charge." The respondent, in its answer, denied that it had committed any unfair labor practice, and asserted that the employees referred to in the complaint were laid off because of a reduction in force and upon the basis of "plant efficiency and seniority."

On July 2, 1948, the Board consolidated the representation case and the unfair labor practice case. The usual proceedings followed, culminating in the order of the Board, enforcement of which is sought.

■ The respondent contends, in substance: (1) that the Board erred in consolidating the representation case with the complaint case; (2) that the Trial Examiner was biased, as shown by his findings and report; (3) that statements shown to have been made by supervisory employees of the respondent to its employees did not violate Section 8(a)(1) of the Act; and (4) that the lay-offs of Ball and Boyd were not discriminatory.

The contentions relative to the consolidation of the representation case with the complaint case and the alleged bias of the Trial Examiner are without merit. The first of these contentions is overruled upon the authority of National Labor Relations Board v. Dixie Shirt Co., Inc., 4 Cir., 176 F.2d 969, 970 and cases cited; and the second contention is overruled upon the authority of National Labor Relations Board v. Donnelly Garment Co., 330 U.S. 219, 236–237, 67 S.Ct. 756, 91 L.Ed. 854, and National Labor Relations Board v. Pittsburgh Steamship Co., 337 U.S. 656, 658–660, 69 S.Ct. 1283.

■ The only question requiring consideration is whether there is an adequate evidentiary basis for the findings and order of the Board. We think that the time has come to abbreviate, so far as possible, opinions in these National Labor Relations Board cases. A detailed review of the evidence is ordinarily futile. The parties are familiar with it, and others are not interested unless some novel question is presented. Almost all of these cases fall into some familiar pattern. The limited scope of our power of review has often been repeated. That the Board is the sole judge of the facts, the credibility of witnesses, the weight of evidence, and the inferences to be drawn from circumstantial and conflicting evidence, is not open to question. Donnelly Garment Co. v. National Labor Relations Board, 8 Cir., 165 F.2d 940, 941 and cases cited. On review, this Court may not concern itself with the correctness of the Board's decision of questions of fact, Donnelly Garment Co. v. National Labor Relations Board, supra, page 942 of 165 F.2d; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701, affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251, but only with whether there is adequate evidence in the record to justify the Board's findings and order. The review of an order of the Board is in no sense a trial *de novo* nor even completely analogous to a review of a judgment of a trial court in a nonjury case. The decision of the Board is like the verdict of a jury, which, on appeal, may be set aside only if unsupported by substantial evidence. In National Labor Relations Board v. Pittsburgh Steamship Co., supra, page 661 of 337 U.S. 69 S.Ct. at page 1286, it is intimated that there may have been changes in the scope of judicial review of the Board's orders, by virtue of the Administrative Proce-

dure Act, 60 Stat. 237, 5 U.S.C.A. § 1001 et seq., and the Labor Management Act, 1947, 61 Stat. 136, 29 U.S.C.A. § 141 et seq. The Administrative Procedure Act, in § 10(e), 5 U.S.C.A. § 1009(e), authorizes the setting aside of "agency action, findings, and conclusions found to be (1) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law", or "(5) unsupported by substantial evidence in any case * * * reviewed on the record of an agency hearing provided by statute." The Labor Management Act, 1947, in § 10(e), 29 U.S.C.A. § 160(e), provides that "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." We think that neither of the Acts referred to has made any material change in the scope of review of the orders of the Board or in its functions as a trier of the facts. A decision of a court, a jury, or an administrative agency, which is unsupported by substantial evidence, is, of course, arbitrary and capricious and may always be set aside on review; but, if the decision has a rational and substantial basis in the evidence and the law, it may not be nullified by a reviewing court, even though that court is of the opinion that it would have reached a different conclusion had it tried the case. It is our understanding that the duty of this Court, on review of an order of an administrative agency, is at an end when it is evident that the action of the agency is based upon substantial evidence and is consistent with the authority granted by Congress. Securities &amp; Exchange Commission v. Chenery Corporation, 332 U.S. 194, 207, 67 S.Ct. 1575, 91 L.Ed 1995.

■ We shall briefly state our views with respect to the sufficiency of the evidence to support the Board's findings and order in the instant case. We think that the finding of the Board that the respondent violated § 8(a) (1) of the Act is amply supported by the evidence in the record tending to prove that the Superintendent of the plant—who was frankly opposed to the Union,—instead of confining himself to argument, advice, expression of view or opinions in his conversations with employees relative to unionization, interrogated them about their union affiliations and sympathies and those of their fellow workers. Such questioning of employees is not protected by § 8(c)[1] of the Act, as amended, 61 Stat. 142, 29 U.S.C.A. § 158(c), and was an unfair labor practice. See and compare, H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 518–520, 61 S.Ct. 320, 85 L.Ed. 309; National Labor Relations Board v. Crown Can Co., 8 Cir., 138 F.2d 263, 266–267; National Labor Relations Board v. Laister-Kauffmann Aircraft Corp., 8 Cir., 144 F.2d 9, 12–13; National Labor Relations Board v. Norfolk Southern Bus Corp., 4 Cir., 159 F.2d 516, 518; National Labor Relations Board v. Dixie Shirt Co., Inc., 4 Cir., 176 F.2d 969, 971–973. Since the evidence as to the questioning and surveillance of respondent's employees by representatives of management is sufficient to sustain the Board's order with respect to a violation of § 8(a) (1) of the Act, it is unnecessary to consider whether the Board's finding that a wage increase granted by respondent to its employees shortly prior to the election was also a violation of that section.

■ We think that there was evidence in the record sufficient to sustain the finding of the Board that the lay-off of Robert Ball was discriminatory. Ball was president of the Union. His testimony shows that the Superintendent was aware of that fact, and that, in a conversation with Ball, shortly before the election, about the organizational campaign, the Superintendent had intimated that Ball might be laid off. There was also evidence tending to show that Ball was a satisfactory workman and had as much seniority as other employees

1. "Sec. 8. * * *
   "(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

who were not laid off when the respondent found it necessary to reduce its force. The Board, we think, was justified in inferring that Ball's union affiliations and activities either caused or contributed to his being separated from his job.

The question whether there was adequate evidence to justify the finding that Boyd's lay-off was influenced by his union affiliations is more doubtful. From the evidence which it credited, the Board could believe that Ball and Boyd were closely associated, both in their work at the plant and in their union activities; that the Superintendent know of Ball's union affiliations, through questioning him; that Boyd's work was satisfactory; that he had as much efficiency and seniority as other employees who were retained in service; and that, in reducing its force, the respondent did not lay off Ball and Boyd because of any lack of efficiency or seniority. While the Board may be mistaken about Boyd's union affiliations having anything to do with his lay-off, we cannot substitute our inferences for those of the Board or say that its finding with reference to Boyd's alleged discriminatory lay-off has no rational basis in the evidence. See and compare, National Labor Relations Board v. Dixie Shirt Co., Inc., supra, page 973 of 176 F.2d; National Labor Relations Board v. Laister-Kauffmann Aircraft Corp., supra, pages 14-15 of 144 F.2d.

The petition of the Board for enforcement of its order is granted.