**Frances SWINICK, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 75–1114.**

United States Court of Appeals, Third Circuit.

Argued Oct. 2, 1975.

Decided Dec. 30, 1975.

Frances Swinick, pro se.

Paul J. Spielberg, Vivian A. Miller, Peter G. Nash, John S. Irving, Jr., Patrick H. Hardin, Elliott Moore, N.L.R.B., Washington, D.C., for respondent.

Before VAN DUSEN, MARIS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Frances Swinick petitions this court under section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f) (1970),[1] to review and set aside an order of the National Labor Relations Board (the "Board") dismissing in its entirety an unfair labor practice complaint against W. T. Grant Company (the "Company"). *W. T. Grant Co. v. Swinick*, 214 NLRB No. 96 (Nov. 6, 1974). Petitioner also moves this court for an order pursuant to section 10(e) of the Act, 29 U.S.C. § 160(e) (1970),[2] remanding the case to the Board for the purpose of taking additional evidence.

On November 20, 1973, the General Counsel of the Board, following the filing of charges by petitioner, issued an unfair labor practice complaint against the Company. The complaint alleged that the Company had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3) (1970),[3] by coercively interrogating employees concerning union activities, by threatening employees with economic reprisals if they became members of or gave assistance to a labor organization, and by discharging and refusing to reinstate employee Frances Swinick because of her efforts to organize the Company's

---

1. Section 10(f) provides, *inter alia:*

   Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. . . . Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section . . .

   29 U.S.C. § 160(f) (1970).

2. Section 10(e) states in pertinent part:

   If either party shall apply to the court for leave to adduce additional evidence and shall

show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order.

29 U.S.C. § 160(e) (1970).

employees. After a hearing on these charges, the administrative law judge issued an opinion and order in which he concluded that the Company had engaged in unfair labor practices by dismissing petitioner because of her union organizing activities. He ordered the Company to reinstate petitioner and provide her with back pay. *W. T. Grant Co. v. Swinick*, Case No. 22–CA–5631 (Feb. 25, 1974). Exceptions were taken from the administrative law judge's order, and on November 6, 1974, the Board reversed the conclusions of the administrative law judge and dismissed the complaint against the Company in its entirety. *W. T. Grant Co. v. Swinick*, 214 NLRB No. 96 (Nov. 6, 1974).

We vacate the order of the Board and, pursuant to section 10(e), remand the case to the Board for the purpose of taking additional evidence. Because of our conclusion in this regard, we do not reach the question whether the findings of the Board are supported by substantial evidence on the record considered as a whole. *See* 29 U.S.C. § 160(f) (1970).

## I

Because we must determine the materiality of the evidence sought to be adduced on remand, *see* p. 8 infra, it is necessary to review the evidence and testimony presented at the hearing.

At the hearing before the administrative law judge, petitioner testified that many fellow employees of the Company's Somerset, New Jersey store were dissatisfied with their working conditions and that they had approached petitioner and had asked her to investigate the possibility of organizing a union in the store. She stated that on September 21, 1973, she met with union representatives of District 65, Distributive Workers of America and that on the same day she approached employees at the Somerset

store to determine how many employees would be interested in attending a meeting to discuss the union. According to petitioner, approximately 50 employees signed her address book as an expression of interest in the union.

The focus of much of the testimony at the hearing concerned three conversations that occurred on September 22, the day on which petitioner was discharged, between various of the Company's management personnel and employees. The first conversation involved Store Manager Anthony Renna, Operations Manager James Downs and employees Mary Vail and William Molnar (the "Renna Conversation"). Petitioner testified that while away from her regular station in the toy shop, she overheard Renna ask the employees what petitioner was doing and heard the word "union" mentioned. Vail later testified that she had spoken to Renna and Downs about petitioner's union organizing activities but that she could not recall whether the word "union" was mentioned during the Renna Conversation.

The second conversation, occurring later that same day, involved Department Manager Ray Patenaude and employees Vail, Molnar, Doug Tompkins and Tom Iacorino (the "Patenaude Conversation"). Petitioner stated that Patenaude told the employees "not to join the union," and that "things would be bad or tough for them if they joined the union." Vail and Molnar testified that Patenaude related to the group his prior experiences with a different union. Patenaude claimed that he was merely expressing his opinion about unions in response to an employee question.

The third conversation took place at the customer service desk and involved Department Manager Kenneth Bergen, employee Ann Piotrowski and customer Marlene Kimbell (the "Bergen Conversa-

---

**3.** Section 8(a) provides, in part:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:

29 U.S.C. § 158(a) (1970).

tion"). According to petitioner's testimony, employee Piotrowski informed Bergen that petitioner, who was standing five feet from Bergen, was organizing a union at the store. Bergen then stated that he was aware of petitioner's union activities and that she was going to be fired. In his testimony, Bergen denied the statements attributed to him.

Shortly after the conversation, at about 5:00 or 5:30 p. m. that same day, Bergen apprised petitioner that he was reducing her work schedule from 35 to 25 hours per week. Petitioner testified that she then asked him for her new schedule. Bergen testified that petitioner claimed that she could not meet the new schedule because of transportation difficulties. On rebuttal, petitioner denied that she had made this statement and asserted that she lived within walking distance of work and that she had never missed work because of transportation difficulties.

At 5:45 p. m., petitioner was summoned to the personnel office and informed by Downs and Bergen that she was being discharged. Petitioner testified that she asked them if she was being fired because of her union activities and that Downs stated that this was the first time he had heard about her involvement with union organizing activities. In their testimony, Downs, Bergen and Renna asserted that petitioner's hours were reduced because of the need for payroll reduction[4] and that she was discharged because they believed she could not meet the new schedule due to transportation difficulties. They testified that they had not discussed with petitioner the source of her alleged transportation problems. They denied any knowledge of petitioner's union activities prior to her statement at the time of discharge.

The administrative law judge found that the Company had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act:

[U]pon the entire record before me, including the demeanor of the witnesses, I am persuaded that the testimony of Swinick as recited herein is a truthful, reliable and complete account of the particular events. Insofar as the testimony of employees Vail and Molnar conflicts with the testimony of Swinick, I find that the testimony of Swinick is more reliable and complete. Likewise, insofar as the testimony of Renna, Downs, Bergen and Patenaude conflicts with the testimony of Swinick, I credit Swinick. I am persuaded, as I discussed *infra*, that the testimony of Renna, Downs, Bergen and Patenaude represents an attempt by Respondent to justify the discriminatory and unlawful discharge of Swinick.

Reversing the decision of the administrative law judge, the Board stated that the "logical consistency of the facts requires the conclusion that Swinick's testimony is inconsistent, contrived, and unworthy of belief." The Board noted that certain "missing evidence [cast] substantial suspicion over Swinick's version of the events leading up to her termination." This "missing evidence" included the facts that no witness was called to corroborate petitioner's version of the Bergen Conversation; that no union officials were called to corroborate petitioner's assertion that she was organizing a union in the store; and that only two employees were called to testify to petitioner's union activities although petitioner had testified that she had spoken with numerous employees about the union. In conclusion, the Board stated that without petitioner's testimony there was insufficient evidence to establish that she was terminated because of union activity.

## II

Petitioner asserts that the following evidence should be adduced on remand:[5]

(1) testimony of union officials;

---

4. The Company introduced payroll records that showed reductions in payroll and personnel prior to petitioner's discharge.

5. Petitioner's Application for Leave to Adduce Additional Evidence, Apr. 28, 1975.

(2) petitioner's address book;

(3) testimony of Marlene Kimbell;

(4) transcripts of certain tape recorded telephone conversations between petitioner and Molnar, Vail and Kimbell; [6]

(5) Petitioner's time cards;

(6) classified newspaper advertisements for new employees at various of the Company's stores.[7]

■ This court has held previously that a charging party in an unfair labor practice case whose complaint is dismissed by the Board may petition this court under section 10(e) for a remand to the Board to adduce additional evidence.[8] A motion for leave to adduce additional evidence under section 10(e) is addressed to the sound discretion of the court. *Southport Petroleum Co. v. NLRB,* 315 U.S. 100, 104, 62 S.Ct. 452, 86 L.Ed. 718 (1942).[9] In order to ensure that section

10(e) would not be used as an instrument of delay, Congress provided that before a remand is granted, the court must be satisfied that (1) the additional evidence is material, and (2) there were reasonable grounds for failure to adduce it at the hearing below. *Id.;* 29 U.S.C. § 160 (e) (1970).

■ All of the evidence petitioner seeks to adduce, except the classified advertisements,[10] is material because it either bears on the credibility of witnesses or supplies what the Board considered was "missing evidence." [11] The testimony of union officials concerning their contacts with petitioner and the address book containing the names of 50 employees interested in organizing a union may corroborate petitioner's testimony and supply "missing evidence" of petitioner's union organizing activities prior to her discharge.[12] Marlene Kimbell's testimo-

---

**6.** Petitioner telephoned employees Molnar and Vail and customer Kimbell following her discharge and engaged them in conversation about the events leading up to her discharge. Unknown to Vail, Molnar and Kimbell, petitioner tape recorded the conversations. Transcripts of these conversations appear in Petitioner's App. at P.A. No. 2(a) to (h).

**7.** Petitioner's App. at P.A.–6(a) to (q).

**8.** *Marine Engineers' Beneficial Ass'n. v. NLRB,* 202 F.2d 546, 548 n. 4 (3d Cir.), *cert. denied,* 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953); *Jacobsen v. NLRB,* 120 F.2d 96, 100 (3d Cir. 1941) (en banc); *accord, United Automobile, Aircraft & Agricultural Implement Workers v. NLRB,* 231 F.2d 237 (7th Cir. 1956); *Optical Workers v. NLRB,* 227 F.2d 687 (5th Cir. 1955). The charging party may avail himself of the procedures set forth in section 10(e), which on its face is limited to petitions for enforcement by the Board, by way of section 10(f). Section 10(f) permits a person aggrieved by a Board order to petition a court for review and provides that, upon the filing of such a petition, the court shall proceed in the same manner as under section 10(e). See note 1, *supra.* Thus, the procedures set forth in section 10(e) are assimilated into section 10(f). *Amalgamated Utility Workers v. Consolidated Edison Co.,* 309 U.S. 261, 266, 60 S.Ct. 561, 84 L.Ed. 738 (1940).

**9.** *See NLRB v. Indiana & Michigan Elec. Co.,* 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579 (1943); *Jacobsen v. NLRB,* 120 F.2d 96 (3d Cir. 1941)

(en banc). However, the power to order a remand to adduce additional evidence cannot be used to enlarge the statutory scope of the court's review. *NLRB v. Donnelly Garment Co.,* 330 U.S. 219, 234–35, 67 S.Ct. 756, 91 L.Ed. 854 (1947).

**10.** The classified newspaper advertisements are not material to petitioner's charges. All but three of the advertisements are for openings in stores other than the Somerset store. Further, all of the advertisements date from January 1974, whereas petitioner was discharged in September 1973. Petitioner's App. at P.A.–6(a) to (q).

**11.** *See NLRB v. Donnelly Garment Co.,* 330 U.S. 219, 234, 67 S.Ct. 756, 91 L.Ed. 854 (1947); *Jacobsen v. NLRB,* 120 F.2d 96, 100 (3d Cir. 1941) (en banc). In *Donnelly* the Supreme Court required a remand to adduce additional evidence because the evidence bore materially on the credibility of key witnesses at the hearing. In *Jacobsen* this court ordered a remand to adduce evidence on whether the employer's operations affected commerce because, in its decision dismissing the complaint, the Board had noted the lack of evidence on this point.

**12.** The Board described as suspicious the lack of testimony, other than petitioner's, that, she had met with union officials, and the absence of employee witnesses, other than Vail and Molnar, who might have corroborated her testimony of widespread organizing efforts. 214 NLRB No. 96, at 4.

ny is material because it may substantiate petitioner's version of the crucial Bergen Conversation, a version that the Board found was "incredible." If admissible,[13] the transcripts of the taped conversations between petitioner and Vail, Molnar and Kimbell may be used for impeachment purposes, and because the credibility of witnesses was a determinative factor in the Board's decision, this evidence also is material.[14] Finally, the time cards are material because they may show that petitioner had been able to meet varying work schedules in the past. The Board is correct in stating that the question before the Board was not whether the petitioner could meet the new schedule but whether she had told Bergen that she could not meet it due to transportation difficulties. However, the testimony on this point was contradictory;[15] consequently, any evidence as to petitioner's past behavior when confronted with new work schedules is material.

We also find that there were reasonable grounds for the failure to adduce this evidence at the hearing before the administrative law judge. Petitioner relied heavily on the General Counsel to present her case. Petitioner testified that the attorney representing the General Counsel had advised her that they would take care of the entire conduct of the litigation. Transcript of the Hearing before the Administrative Law Judge at 108 (Dec. 12, 1973). She was unfamiliar with the procedures of an unfair labor practice case and was without counsel. Prior to the hearing, she wrote to the General Counsel and requested that three union representatives and Marlene Kimbell be subpoenaed as witnesses and that petitioner's address book containing the signatures of 50 employees be placed in evidence at the hearing. Petitioner's App. at P.A.–9. General Counsel did not subpoena the union officials and refused to enforce the subpoena against Kimbell when she failed to appear at the hearing. Transcript at 162.[16]

A review of the transcript of the hearing demonstrates that petitioner, like the Board, felt that the General Counsel had failed to introduce key evidence. Transcript at 71.[17] Consequently, petitioner sought to call her own witnesses and present her own evidence. Petitioner moved for a continuance in order to gain time to subpoena the union officials and to enforce the subpoena against Marlene Kimbell. The administrative law judge denied the motion. *Id.* at 165. She also attempted to place in evidence the tape transcripts, but because she did not understand the procedure for authentication, she was unsuccessful. *Id.* at 106–07. Finally, petitioner sought to place into evidence her time records but was also unsuccessful in this attempt.[18] Under these circumstances, we conclude that there were reasonable grounds for the failure to adduce the aforementioned evidence at the hearing.

### III

Accordingly, the order of the Board dismissing in their entirety the charges against the Company will be set aside,

---

**13.** There is insufficient evidence in the record before us to determine the admissibility of these transcripts. Petitioner did offer the transcripts as evidence but did not understand the procedure for authentication. Transcript of the Hearing before the Administrative Law Judge at 101–05 (Dec. 12, 1973). Unfortunately, the General Counsel would not aid petitioner in her attempt to authenticate the transcripts. *Id.* at 105, 106. On remand, the Board will be able to determine the admissibility of the tapes and the weight to be accorded to them. *See Pittsburgh Plate Glass Co. v. NLRB,* 313 U.S. 146, 163, 61 S.Ct. 908, 85 L.Ed. 1251 (1941).

**14.** *See NLRB v. Donnelly Garment Co.,* 330 U.S. 219, 234, 67 S.Ct. 756, 91 L.Ed. 854 (1947).

**15.** *See* p. 798 *supra.*

**16.** The attorney representing the General Counsel explained that she had decided that she did not need the witnesses at that time. Transcript at 160.

**17.** General Counsel called only two witnesses, petitioner and Vail.

**18.** The administrative law judge was otherwise solicitous of petitioner's desire to present evidence and accorded her broad leeway in calling and questioning witnesses.

and the case will be remanded to the Board to reinstate the complaint and to adduce such additional evidence as is consistent with this opinion.