UNITED STATES

v.

Robert Carlton SAXON, 551 06 0079, Mess Management Specialist Seaman Apprentice (E-2), U. S. Navy.

NCM 78 1076.

U. S. Navy Court of Military Review.

Sentence Adjudged 25 June 1979.

Decided 29 Aug. 1980.

LCDR P. B. Haskel, JAGC, USN, Appellate Defense Counsel.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LT Patrick A. Fayle, JAGC, USN, Appellate Defense Counsel.

LT J. G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and DONOVAN, JJ.

CEDARBURG, Chief Judge:

Appellant pleaded guilty at his original general court–martial to voluntary manslaughter, lesser included in a Charge of unpremeditated murder, wrongful appropriation of the homicide victim's pickup truck, and unauthorized absence, in violation of Articles 119, 121 and 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 919, 921, 886. Findings of guilty in accordance with his pleas were entered by the military judge at an Article 39(a), 10 U.S.C. § 839(a) session on 29 March 1978. Sentence was imposed by a court composed of officer and enlisted members on 5 April 1978. On review by this Court, the findings were affirmed but the sentence was set aside due to erroneous restriction of *voir dire* during the empaneling of the general court–martial members. A rehearing on the sentence was authorized. *United States v. Saxon*, 7 M.J. 609 (N.C.M.R.1979). The rehearing has been completed. The sentence approved below consists of a dishonorable discharge, confinement at hard labor for 6 years, forfeiture of $350.00 pay per month for 72 months and reduction to pay grade E–1. The case is again before us for decision.

Appellant has assigned eight alleged errors but we conclude that he has not been prejudiced in any substantial right and that only the following warrant discussion:

I

THE ACCUSED WAS IMPROPERLY BROUGHT TO TRIAL, OVER HIS OBJECTION, PRIOR TO THE EXPIRATION OF FIVE DAYS AFTER HE WAS SERVED WITH THE CHARGES.

II

THE MILITARY JUDGE IMPROPERLY REFUSED TO ANSWER QUESTIONS, ON *VOIR DIRE*, RELATING TO HIS POSSIBLE DISQUALIFICATION BASED ON THE REVERSAL OF THIS CASE BEFORE.

III

THE MILITARY JUDGE WAS IMPROPERLY DETAILED TO THE CASE INASMUCH AS THE CONVENING AUTHORITY RELINQUISHED HIS DECISION TO THE LOCAL JUDICIARY.

I

The rehearing on sentence convened on 18 June 1979. The defense objected to proceeding to trial prior to expiration of five days after having been served with a copy of the charges. The individual military defense counsel represented to the military judge at the start of the proceedings that "[t]he accused in this case was not served with charges until less than one hour ago." The military judge implicitly concluded that the service of charges on 5 December 1977 prior to the original trial satisfied the statutory requirement of Article 35, UCMJ, 10 U.S.C. § 835, rejecting the argument of defense counsel that paragraphs 44h and 58c, *Manual for Courts–Martial, 1969 (Rev.)* (MCM), and Article 35, UCMJ, 10 U.S.C. § 835, mandated a re–service of charges upon a rehearing. Appellate defense counsel renews the trial objection, additionally citing paragraphs 81b (2) and 44g, MCM.

We have examined each of the *Manual* provisions as well as Article 35, UCMJ, 10 U.S.C. § 835, and find no explicit requirement for charges to be served a second time prior to a rehearing. We conclude further that none of the cited authorities persuasively supports appellant's argument to that effect. Article 35, 10 U.S.C. § 835 simply does not address a rehearing; it prohibits bringing an accused to trial before

a general court–martial or an Article 39(a), 10 U.S.C. § 839(a) session of a general court–martial within a period of five days after service of charges. Paragraph 58c, MCM, provides as one basis for a continuance, the failure to serve a copy of charges as required by Article 35, UCMJ, 10 U.S.C. § 835. Paragraph 44g relates to the duties of trial counsel during trial and does not discuss, even remotely, service of charges for a rehearing. Paragraph 44h provides that immediately upon receipt of the charges referred to trial, trial counsel will serve a copy of the Charge Sheet on the accused and will inform the defense counsel; no further amplification of that duty is articulated. Paragraph 81b likewise provides no specific guidance, either expressly or by implication, which imposes a requirement at a sentence rehearing to re–serve charges; it merely states that in a rehearing the procedure in general is the same as in any trial providing for logical omissions of specific portions of trial proceedings, impliedly excluding procedures to be followed during the pretrial phase.

■ We observe that the underlying purpose of the Code provision for an absolute right to a period of delay after service is to accord an accused protection against being tried too speedily. *See A Bill to Enact and Establish a Uniform Code of Military Justice; Hearings on H.R. 2498 Before a Subcommittee of the Committee on Armed Services of the House of Representatives,* 81st Cong., 1st Sess. 1012 (March 25, 1949). We see no possibility that that particular evil does or could exist under these circumstances. Appellant was served with charges on 5 December 1977 and found guilty in accordance with his pleas at his original trial, which concluded on 5 April 1978. Those findings have been affirmed on review. It is clear that appellant, having been served with a copy of the decision, was aware of the 20 April 1979 decision of this Court setting aside the sentence but affirming the findings. Appellant and his counsel both were furnished copies of the Supplementary General Court–Martial Order No. 4–79 dated 4 June 1979, which ordered a rehearing on the sentence pursu-

ant to the convening authority's Order dated 1 June 1979 appointing a general court–martial. Appellant did not assert a need for a continuance to further prepare his case as the basis for his objection to proceeding, but rather stood on a supposed statutory right. We are satisfied that no statutory right to an additional waiting period upon a rehearing exists.

## II

Appellant's second allegation of error stems from the military judge's refusal to answer a number of questions on *voir dire* as to his qualification to sit on the rehearing. The military judge was the same judge who presided at the original trial. The basis for setting aside the sentence upon review of the first court–martial was that appellant was prejudiced by the military judge's "erroneous restriction on *voir dire.*" *United States v. Saxon, supra,* 7 M.J. at 611.

The opinion, as dictum, also found objectionable, citing prior case holdings by this Court, the practice dictated by the Local Court Rules of the Southwest Judicial Circuit which reserved examination of prospective court members solely to the military judge. Unsuccessful objection to that procedure had been made at the original trial by defense counsel who also was serving as counsel at the rehearing. In point of fact, the Court of Military Appeals, ruling in a different case on the same procedure, later held that the practice was acceptable and did not restrict an accused's right to be tried by an impartial court. *United States v. Slubowski,* 7 M.J. 461 (C.M.A.1979).

At the rehearing, during the *voir dire,* the following colloquy occurred:

IMC: How do you feel about the defense in this case having successfully challenged the voir dire rules of the court?

MJ: I have no personal feeling on it whatsoever, counsel.

IMC: Professionally do you believe that the Court of Military Review was in error?

MJ: The Court of Military Review has rendered a decision in the *United States* versus *SLUBOWSKI* [5 M.J. 882 (N.C.M. R.1978)] setting forth the procedures to be followed regarding voir dire and I, since that case has been decided, I have followed the law in that case.

IMC: We prefer your honor not [sic] to express your professional opinion as to whether or not the Court of Military Review was correct or incorrect in their overruling the voir dire procedures that were used in this case.

MJ: That question does not touch upon my qualifications, counsel, and I am not going to answer that.

IMC: Has your honor personally attempted to support or defend the voir dire procedures which were used in the *LEIFER* or the SAXON court–martial?

MJ: Counsel, I'll state right now that I do intend to follow the law in not only the voir dire procedures but in all procedures in this case, and therefore I don't think that it is necessary to answer your question, and I will not answer it since I don't believe that the question touches upon my qualifications.

IMC: Was the finding by the Court of Military Review of prejudice in the SAXON case in any way a rejection of the position which you had taken in promulgating the voir dire proceedings and by following the memorandum of law?

MJ: I don't think that question touches upon my qualifications to sit in this case, counsel, and I do not intend to answer.

IMC: Your honor, the manner of your rejection of our contention that we were entitled to a five day waiting period has suggested to us that the court is unhappy with us for having raised that issue and for having asked for an explanation of the rule. Is the court in fact displeased with us for having raised that?

MJ: I have no idea how you got such an idea, counsel. I make my rulings and whether you are displeased or what perception you draw from my rulings is entirely your own.

IMC: Was your honor in any way committed, personally or professionally, to the voir dire procedures which were promulgated by this court and used in *LEIFER* and SAXON?

MJ: I don't see that that touches upon my qualifications, counsel. I don't intend to answer that.

IMC: Your honor, may I be permitted to suggest the way in which we feel that reflects on the qualifications of the Military Judge to hear the rehearing?

MJ: All right.

IMC: Your honor, if in fact the Military Judge was committed to the procedures which were promulgated by the Circuit Military Judge, who was, in fact, the trial judge, then the finding of prejudice by the Court of Military Review and the finding of error by that Court in the procedures which were used would, in effect, be a decision which was rendered against the Military Judge and the material which he had submitted, and in that case the Military Judge would have been personally and professionally . . . might have been personally and professionally affronted by the decision in the SAXON case by the Court of Military Review. We would feel that if a Military Judge had been personally or professionally affronted by the decision in the initial case, then the Judge may or may not be qualified to hear the case on rehearing.

MJ: Counsel, I don't think that such an improper suggestion warrants any comment by this court. I don't think that any sitting Judge takes any, either should or does, take any decision by an Appellate Court which either upholds him or reverses him personally. I know this court does not. I do not personally and I know of no Judge who does and the mere suggestion from you that a Judge would do that I find to be distasteful. However, if you wish to make such a suggestion you may, but it is completely unfounded and incorrect.

(R.14–16).

▮▮▮ A judge is not disqualified from sitting in a rehearing resulting from rever-

sal of his rulings in an earlier trial. *N. L. R. B. v. Donnelly Garment Company*, 330 U.S. 219, 236, 67 S.Ct. 756, 765, 91 L.Ed. 854 (1947); *United States v. Partin*, 552 F.2d 621, 637–638 (5th Cir. 1977). We are satisfied that the answers of the military judge reflected an abandonment of procedures he had instituted which had been criticized in dictum in the earlier review of this case and held to be erroneous in a holding by this Court in another case. The holding by this Court on the exact issue involved, of course, was not upheld upon appeal to the Court of Military Appeals. *United States v. Slubowski, supra.* The answers given by the military judge demonstrated an intention to be bound by the law and made irrelevant the additional questions directed at determining his personal feelings about being reversed or criticized by an appellate court.

### III

We conclude that the procedure followed in this case for nominating and detailing the military judge was proper. The nomination for a military judge was solicited from the Circuit Court Clerk by a legal assistant in the office of the convening authority's staff judge advocate. The convening authority accepted the nomination and personally subscribed the convening order which detailed the military judge who conducted the rehearing. We distinguish this background from the factual setting of *United States v. Newcomb*, 5 M.J. 4 (C.M.A. 1978), cited by appellant. In *Newcomb*, the convening authority delegated to the staff judge advocate the authority to amend the convening order containing the names of members personally detailed by the convening authority to provide for counsel and a trial judge when their identities for a specific case were ascertained.

The defense maintains that the procedures established by the Circuit Judge for the Southwest Judicial Circuit to nominate a military judge for detailing by a general court–martial convening authority arrogated to the Circuit Military Judge the prerogative to select judges and "virtually controls the choice". We are well aware that the number of judge advocates certified as qualified to perform duties of a general courts–martial military judge is governed by both the number of judge advocates with requisite qualifications and overall Navy and Marine Corps caseload. The Navy and Marine Corps Trial Judiciary was established and has functioned as a logical and effective judicial management system by which qualified judge advocates could be designated, pursuant to Article 26(e), UCMJ, 10 U.S.C. § 826(e), as general court–martial military judges, to perform those duties with an optimum utilization of necessarily scarce judicial resources. We recognize that in the normal case in all judicial circuits, absent a compelling reason to appoint a military judge from outside an established circuit, the designated general court–martial military judge for a Judicial Circuit will be nominated to service all general courts–martial convened in that geographic area. The choice of military judges, and their predecessor law officers, has always been conditioned on availability of judge advocates designated and certified pursuant to law to perform those duties. The actual detailing of the military judge nonetheless is not denied the convening authority. We find that the convening authority's choice in this case was neither unnecessarily nor irrationally circumscribed by availability of judges, taking into account both professional qualifications and geographical considerations. Noting a real distinction between nominating a judge and detailing him to a case, we conclude the procedure followed in the instant case is unobjectionable since the convening authority personally detailed the military judge.

The findings, as have been previously affirmed, and the sentence upon rehearing, as approved on review below, are hereby affirmed.

Judge SANDERS and Judge DONOVAN concur.