**MELAMINE CHEMICALS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 80–6–00878.

United States Court of International Trade.

March 25, 1983.

Baker & McKenzie, Washington, D.C. (Bruce E. Clubb and Ava A. Zydor, Washington, D.C., on briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (Francis J. Sailer, Washington, D.C., on briefs), for defendant.

LANDIS, Judge:

This is one of three related cases alleging violation of the antidumping laws with respect to the chemical melamine. Plaintiff commenced the action pursuant to section 516A of the Tariff Act of 1930, as added July 26, 1979, Pub.L. 96–39, Title X, § 1001(a), 93 Stat. 300. (Trade Agreements Act of 1979) (19 U.S.C. § 1516a(a)(2)(B). The exporting nations involved are Austria, Italy and the subject nation of this action, the Netherlands.

Plaintiff moves pursuant to Rule 56.1 of this court for review of a *Final Negative Determination of Sales at Less Than Fair Value,* issued by the Department of Commerce on May 5, 1980 (45 Fed.Reg. 29619, eff. April 28, 1980), which held that there were no sales of melamine to this country at less than fair value.

Defendant opposes said motion and procedurally cross-moves to affirm the Department of Commerce's *Final Negative Determination of Sales at Less Than Fair Value.* The court conducted oral argument and the parties filed post-argument supplemental briefs pursuant to Rule 56.1(d).

The record indicates that on February 23, 1979, plaintiff *Melamine Chemicals, Inc.* filed a timely complaint with the Department of Treasury alleging Less Than Fair Value Sales (LTFV) of melamine from the Netherlands. On May 1, 1979, Treasury initiated antidumping investigations (44 Fed.Reg. 25555) and, on November 13, 1979, Treasury published a *Tentative Negative Determination* in the Netherlands case finding that there were no sales at LTFV (44 Fed.Reg. 65517).

On January 2, 1980, the Department of Commerce (International Trade Administration Division) assumed responsibility for LTFV determinations previously entrusted to Treasury.[1]

On February 26, 1980, Commerce announced that it found error in Treasury's computations and that there was, in fact, a dumping margin (LTFV) in the Netherlands case. (45 Fed.Reg. 12466). The Department of Treasury's *Tentative Negative Determination* of November 13, 1979, was amended to an *Affirmative Preliminary Determination.*

On March 20, 1980, Commerce issued an *Affirmative Final Determination* (45 Fed. Reg. 20152, effective date March 27, 1980). On May 5, 1980, Commerce *amended its*

*original findings* and published the *Final Negative Determination* in the Netherlands case herewith, the subject of review. (45 Fed.Reg. 29619, effective date April 28, 1980).

## ISSUES

Plaintiff raises several contentions in support of its argument that Commerce's Final Negative Determination is contrary to law.

Initially plaintiff contends that Commerce had no authority to revoke its Final Affirmative Determination dated March 20, 1980, in that the antidumping laws do not specifically grant Commerce authority to change a final determination in an antidumping proceeding and further, that current Commerce regulations do not clothe Commerce with authority to revoke or amend a final determination in an antidumping proceeding. Additionally, plaintiff points out that this court has previously sustained its position in *Royal Business Machines, Inc. v. United States,* 1 Ct. Int'l. Trade 80, 507 F.Supp. 1007 (1980), aff'd 669 F.2d 692 (Cust. & Pat.App.1982).

In its second major contention plaintiff states that Commerce denied it due process of law by considering correspondence not served on plaintiff and by holding *ex parte* meetings with Respondent's representatives. In support of this contention plaintiff raises three arguments. First, both Commerce and respondent Dutch State Mines[2] (DSM) violated Commerce Regulation 19 C.F.R. § 353.46 by not serving cop-

---

1. The functions of the Secretary of the Treasury for less than fair value determinations were transferred to the Secretary of Commerce pursuant to Reorg. Plan No. 3 of 1979, § 5(a)(1)(C), 44 Fed.Reg. 69275, 93 Stat. 1381, eff. Jan. 2, 1980, as provided by section 1–107(a) of Ex. Ord. No. 12188, Jan. 2, 1980, 45 Fed.Reg. 993.

2. 19 C.F.R. § 353.46 Submission of information and written views.

(a) *Submission of information and written views.* Except in situations where it would be manifestly unjust, any information or written views submitted in connection with a proceeding shall be considered only if received within the time established by these regulations or by specific instructions applicable to any request

for information; and information or written views received after such time shall not be considered in the proceeding. Any written views intended to be considered in connection with a proceeding shall be submitted on letter-size paper, double spaced, in at least 10 copies, to the Secretary, Attention: Assistant Secretary for Trade Administration, Room 3826, Department of Commerce, Washington, D.C. 20230. Except when the Secretary determines it will be unduly burdensome to the party to the proceeding, in which case the Secretary shall effect the service, on counsel for each party to the proceeding as of the date of such filing, or if not represented by counsel, then the person designated for such purpose by the par-

ies of DSM's submissions to Commerce upon plaintiff. Second, Commerce violated 19 U.S.C. § 1677f(a)(3) and 19 C.F.R. § 353.-26[3] by not promptly placing in the public record a written record of meetings between Commerce staff and representatives of DSM. Third, one business day's notice to plaintiff of additional documents submitted by DSM and the *ex parte* meetings between Commerce staff and DSM does not cure a denial of due process.

In its third major contention plaintiff argues that Commerce's determination of Foreign Market Value (FMV) is contrary to the antidumping laws, citing 19 U.S.C. § 1677b(a)(1).[4] Plaintiff states that the antidumping laws do not grant Commerce the authority to apply the exchange rate from the preceding calendar quarter to calculate FMV in a LTFV proceeding, citing 31 U.S.C. § 372 and 19 C.F.R. § 353.56.[5] Plaintiff further argues that by using the

---

ty. A certificate of such service shall accompany any such filing.

(b) *Designation of agent.* Every party to the proceeding shall designate a person to receive service of all papers filed in a proceeding. A list of such designated agents shall be made available by the Secretary.

**3.** 19 U.S.C. § 1677f. Access to information
(a) Information generally made available—
(3) *Ex parte meetings.*—The administering authority and the Commission shall maintain a record of ex parte meetings between—
(A) interested parties or other persons providing factual information in connection with an investigation, and
(B) the person charged with making the determination, and any person charged with making a final recommendation to that person, in connection with that investigation. The record of the ex parte meeting shall include the identity of the persons present at the meeting, the date, time, and place of the meeting, and a summary of the matters discussed or submitted. The record of the ex parte meeting shall be included in the record of the proceeding.
19 C.F.R. § 353.26 Ex parte meetings.

A written memorandum will be prepared of any *ex parte* meeting between (a) any interested party or other person providing factual information relating to a determination in the proceeding and (b) the person to whom the authority to make determinations under the Act has been delegated (the Assistant Secretary for Trade Administration) or the person making a final recommendation for decision to such person (the Deputy Assistant Secretary for Import Administration). Such memorandum shall be prepared as expeditiously as possible. It shall be included in the official record. The memorandum of such *ex parte* meeting shall include the date, time and place of the meeting, the identity of all persons present, and a non-confidential summary of the matters discussed or then submitted. Normally this memorandum shall be prepared by one of the Government participants at the meeting. If the Assistant Secretary or Deputy Assistant Secretary directs that the memorandum be prepared by a non-government participant, the Assistant

Secretary or Deputy Assistant Secretary (whichever directs preparation by a non-government participant) shall act expeditiously to approve and include in the record such memorandum.

**4.** 19 U.S.C. § 1677b. Foreign market value
(a) Determination; fictitious market, sales agencies.—for purposes of this subtitle—
(1) In general.—The foreign market value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States—
(A) at which such or similar merchandise is sold, or, in the absence of sales, offered for sale in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for home consumption, or
(B) if not so sold or offered for sale for home consumption, or if the administering authority determines that the quantity sold for home consumption is so small in relation to the quantity sold for exportation to countries other than the United States as to form an inadequate basis for comparison, then the price at which so sold or offered for sale for exportation to countries other than the United States,
increased by, when not included in such price, the cost of all containers and coverings and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, except that in the case of merchandise purchased or agreed to be purchased by the person by whom or for whose account the merchandise is imported, prior to the time of importation, the foreign market value shall be ascertained as of the date of such purchase or agreement to purchase. In the ascertainment of foreign market value for the purposes of this subtitle no pretended sale or offer for sale, and no sale or offer for sale intended to establish a fictitious market, shall be taken into account.

**5.** 19 C.F.R. § 353.56 Conversion of currencies
(a) *Rule for conversion.* In determining the existence and amount of any difference between the United States price and the fair value

exchange rate of the preceding calendar quarter to calculate FMV, Commerce did not compute "the price" of the foreign goods as required by 19 U.S.C. § 1677b(a)(1).

The major issue presented is Commerce's application of monetary conversion rates. The time frame under investigation is November 1, 1978 through March 31, 1979. As previously stated, Commerce found LTFV sales and the consequent dumping margin involving sales of melamine from the Netherlands. (Affirmative Final Determination, pub. in 45 Fed.Reg. 20152). Subsequently, Commerce amended this determination and published a Final Negative Determination of Sales at LTFV for melamine exported from the Netherlands (45 Fed.Reg. 29619).

■ Commerce's amended ruling (eff. April 28, 1980) was predicated solely upon an exchange rate issue. Defendant relies upon 19 C.F.R. § 353.56(b) to justify its action. Pursuant to this regulation defendant argues that Commerce properly applied the official monetary exchange rate for the calendar quarter preceding the period of the LTFV investigation. Plaintiff essentially contends that the "90 day lag rule" is contrary to both antidumping statutes and regulations, and that Commerce acted in an

*ultra vires* manner by applying the preceding quarter's exchange rate.

Reviewing plaintiff's and defendant's contentions concurrently with the applicable statutes and regulations issued pursuant thereto, the court finds that plaintiff's position is well-taken.

In an antidumping investigation Commerce (ITA division) determines whether the merchandise under investigation is being sold at LTFV. In order to make this determination Commerce calculates the United States price in accordance with 19 U.S.C. § 1677a and compares it with the calculated Foreign Market Value (FMV) pursuant to 19 U.S.C. § 1677b(a)(1)(A). FMV is generally the price at which the subject merchandise is being sold or offered for sale in the home market of the exporting country. If FMV is greater than the United States price the sales are deemed to be at LTFV and, subsequently, dumping duties will be imposed if there is an affirmative material injury finding by the ITC. In the present case Commerce determined that Respondent's sales in its home market (the Netherlands) were inadequate to provide a meaningful basis for comparison. Therefore, Commerce used the weighted average price of Respondent's sales to a third country, West Germany (19 U.S.C.

or foreign market value for the purposes of this part or of the Act, any necessary conversion of a foreign currency into its equivalent in United States currency shall be made in accordance with the provisions of section 522 of the Tariff Act of 1930, as amended (31 U.S.C. 372):

(1) As of the date of purchase or agreement to purchase, if the purchase price is an element of the comparison; or

(2) As of the date of exportation, if the exporter's sales price is an element of the comparison.

(b) *Special rules for fair value investigations.* For purposes of fair value investigations, manufacturers, exporters, and importers concerned will be expected to act within a reasonable period of time to take into account price differences resulting from sustained changes in prevailing exchange rates. Where prices under consideration are affected by temporary exchange rate fluctuations, no differences between the prices being compared resulting solely from such exchange rate fluctuations will be taken into account in fair value investigations. 31 U.S.C. § 372. Conversion of currency

Value of foreign coin proclaimed by Secretary of Treasury

(a) The value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

Proclaimed value basis of conversion

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after June 17, 1930, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subsection (c) of this section, shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of subsection (a) of this section, for the quarter in which the merchandise was exported.

§ 1677b(a)(1)(B)). Since these sales were made in Deutsche Marks, and the sales to the United States were made in U.S. dollars, it was necessary to convert the Deutsche Mark price into U.S. dollars for comparison purposes.

At this juncture a review of the legislative history and time sequence of enactment of both 31 U.S.C. § 372 and 19 C.F.R. § 353.56 will shed light on their meanings.

The current 31 U.S.C. § 372 has remained in effect and unchanged since 1956.[6] 19 C.F.R. § 353.56 was enacted in 1980. Its predecessor, 19 C.F.R. § 153.52, enacted pursuant to the Trade Act of 1974 (P.L. 93–618), contained virtually the same language as the regulation presently under consideration.[7] Both 19 C.F.R. § 153.52 and 19 C.F.R. § 353.56 mandate that any necessary conversion of foreign currency into United States currency to determine the difference between United States price and fair value or foreign market value *shall* be made in accordance with the provisions of 31 U.S.C. § 372. Thus, these subsequent revisions of the regulations refer to a statute in effect for many years which, in itself, demonstrates the efficiency of the particular statute.

Defendant, however, argues that 31 U.S.C. § 372 does not apply because there is no "assessment and collection of duties" under 31 U.S.C. § 372(b) in that an antidumping duty order has not been entered upon which duties can be assessed and collected. However, Customs own regulations undermine this argument. 19 C.F.R. § 353.56(a) specifically mentions both fair value and foreign market value as being subject to 31 U.S.C. § 372. Since 19 C.F.R. § 353.0 *et seq.* applies only to antidumping duties, and fair value is an estimate of foreign market value, it follows that fair value refers to the fair value investigation by Commerce. By defendant's own admissions an antidumping order is not imposed at the fair value stage of the investigation. Therefore, it would be impossible to have an assessment and collection of duties at that juncture. If defendant's contention were upheld it would render certain language referring to fair value in 19 C.F.R. § 353.56(a) meaningless. It is evident that a fair value proceeding and investigation is subject to the conversion rules of 31 U.S.C. § 372.

Defendant proceeds to argue that 19 C.F.R. § 353.56b grants Commerce a wide range of flexibility at the investigative stage where currency fluctuations are prevalent. Defendant states that 19 C.F.R. § 353.56b is valid and in compliance with the legislative intent to give Commerce a wider latitude to determine foreign market value (fair value) at the investigative stage as opposed to determining foreign market value (actual prices) at the assessment and collection stage. Essentially, defendant demonstrates the difference between fair value and foreign market value.[8] What

6. The last revision of 31 U.S.C. § 372 was made in accordance with the Customs Simplification Act of 1956, Pub.L. 84–927, § 3, 70 Stat. 946 (1956); (522 of the Tariff Act of 1930, as amended (31 U.S.C. § 372)).

7. The original proposed 19 C.F.R. 153.52b provided for a "45 day lag rule" whereby price discrepancies resulting solely from currency fluctuations would not be taken into account for transactions occurring within 45 days of the currency fluctuation. 40 Fed.Reg. 30836 (July 23, 1975).

The final revision of 153.52b removed this 45 day period and substituted "a reasonable time". The reason for this revision is explained in 41 Fed.Reg. 26214 (June 25, 1976) and states:

Paragraph (b) of section 153.52 has been changed to reflect the current international monetary system which is characterized by flexible, rather than fixed currency exchange rates. The revised paragraph will provide that for purposes of fair value investigations in which the facts justify it, a longer term basis for measuring changes in exchange rates may be utilized in making price comparisons. Less than fair value sales should therefore not occur in such cases as a result of brief exchange rate fluctuations.

8. In support of this differentiation defendant cites the following legislative history of the Trade Agreements Act of 1979:

* * * The antidumping duty is equal to the margin of dumping, i.e., the amount by which the foreign market value exceeds the United States price of the merchandise. The provision retains the concept of 'fair value' for purposes of the investigative phase of an antidumping proceeding. The term fair value

defendant does not demonstrate is the statutory authority for the enactment of 19 C.F.R. § 353.56(b) and the authority for using a "90 day lag rule".

Plaintiff does not strongly urge that 19 C.F.R. § 353.56(b) is invalid on its face but, rather, that defendant's application of it in this case is invalid and, further, that this regulation does not specifically authorize the use of a "90 day lag rule".

 The Trade Agreements Act of 1979 (TAA) was enacted to implement the trade agreements negotiated by the United States in the Tokyo Round of the Multilateral Trade Negotiations. The provisions relating to the imposition of antidumping duties were intended to streamline the domestic procedures relating to antidumping actions.[9] Thus, a regulation such as 19 C.F.R. § 353.56(b) promulgated in the spirit of improving administration of the antidumping law by expediting its investigative phase and improving over-all efficiency is well within the intent of the legislature.

However, it was not the intent of the legislature to sacrifice fairness for the sake of expedition thereby arriving at an arbitrary determination. This is clearly stated in the House Report accompanying the TAA. It states in pertinent part:

*Final determinations*

Section 735(a) changes present law by shortening the maximum period within which the Authority must generally make a final determination of less than fair value sales from 90 to 75 days after the date of its preliminary determination. * * The provision reflects the committee's view that the proceeding should be expedited, yet recognizes that the proceeding must not become so abbreviated as to

is not defined in current law nor in the bill. The Committee intends the concept to be applied essentially as an estimate of 'foreign market value' during the period of investigation so as to provide the Authority with greater flexibility in administration of the law.
H.Rep. No. 96–317, 96th Cong., 1st Sess. p. 59 (1979)

**9.** *Subtitle B—Imposition of Antidumping Duties*

result in arbitrary [sic] decisions. Thus, the bill provides the Authority with the flexibility to extend the period for its final decision where necessary. * * *
H.Rep. 96–317, *supra,* p. 67.

The standards of fairness and reasonableness are inherent in the TAA and, therefore, must also be inherent in all regulations enacted pursuant to that statute, including 19 C.F.R. § 353.56(b). Greater flexibility and a liberalized range of latitude for an LTFV investigation does not infer abrogation of rights bestowed by the legislature intended to inure to the benefit of the litigants.

It is axiomatic that where there is a conflict between a statute enacted by the legislature and a rule or administrative regulation promulgated by an administrative agency in accordance with the statute, the statute must prevail. It is the function of the court to determine whether the administrative agency and its officials have acted in an *ultra vires* manner by expanding the powers delegated in the legislative enabling act. *Columbia Broadcasting System v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); *Suwannee Steamship Company v. United States,* 79 Cust.Ct. 19, C.D. 4708, 435 F.Supp. 389 (1977). Inasmuch as the rule making power of an administrative agency is a delegated legislative power which said agency may not use to abridge the authority granted it by the legislature, statutory provisions control with respect to what rules and regulations may be promulgated by such agency. *Morrill v. Jones,* 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267 (1883); *C.B.S. Imports Corp. v. United States,* 80 Cust.Ct. 61, C.D. 4739, 450 F.Supp. 724 (1978).

The provisions of Title I relating to the imposition of antidumping duties are intended not only to make U.S. law and practice consistent with the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (Antidumping Agreement), but also to improve and expedite the domestic procedures pursuant to which investigations are initiated and conducted and antidumping orders are administered. * * *
H.Rep. No. 96–317, id., p. 59

In the present case there is a specific statute, 31 U.S.C. § 372, that authorizes the methodology for currency conversion. Indeed, the statute (31 U.S.C. § 372(c)) [10] provides for currency rate fluctuations. The Customs regulation in issue was promulgated pursuant to the TAA of 1979. On the surface it is harmonious with the legislative enactment. However, Customs' application (the 90 days lag rule) of the statute is hardly in keeping with the legislative intent. In viewing the entire picture one realizes that it is not a mere ninety (90) days for currency fluctuation purposes. By using the currency rate of the preceding quarter for conversion purposes, Commerce is actually permitting the foreign exporter 180 days to rectify its pricing practices to insure that it does not sell at LTFV. This is hardly a reasonable time period in view of the time constraints of the antidumping statute itself.[11]

The court therefore finds that Commerce's arbitrary application of the preceding quarter's conversion rate is outside the scope of the enabling statute. The statute in issue, 31 U.S.C. § 372, is specific in its language and, as such, must take precedence over administrative regulations. In view of this holding on the crucial exchange rate issue it is unnecessary for the court to determine plaintiff's arguments relating to Commerce's right to amend a Final Determination or arguments relating to due process.

Accordingly, it is hereby

ORDERED, that the *Amended Final Negative Determination* published by the United States Department of Commerce (45 Fed.Reg. 29619, pub. May 5, 1980, eff. April 28, 1980) is hereby rescinded and, it is further

ORDERED, that this action is hereby remanded to the United States Department of Commerce to determine, consistent with this opinion and 31 U.S.C. § 372, whether the Netherlands sold the chemical melamine at less than fair value (LTFV) in the United States for the period commencing November 1, 1978 through March 31, 1979. The Secretary of Commerce is directed to report his redetermination to the court within 120 days of the entry of this order.

10. Market rate when no proclamation

(c)(1) If no value has been proclaimed under subsection (a) of this section for the quarter in which the merchandise was exported, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate at noon on the day of exportation, then conversion of the foreign currency involved shall be made—

(a) at a value measured by such buying rate, or

(B) if the Secretary of the Treasury shall by regulation so prescribe with respect to the particular foreign currency, at a value measured by the buying rate first certified under this subsection for a day in the quarter in which the day of exportation falls (but only if the buying rate at noon on the day of exportation does not vary by 5 per centum or more from such first-certified buying rate).

11. Under proposed 19 C.F.R. 153.52(B) (See footnote 7, *infra*), the legislature specifically permitted a "45 day lag rule". It must be emphasized that the 45 days measured currency fluctuations for a period of *45 days from the transaction itself.* The regulation finally enacted provided for a reasonable time to adjust currency fluctuations. There is no demonstrated showing that the legislature would condone a "90 day lag rule" (which essentially works out to a 180 day period) to correct currency fluctuations in pricing.