USX CORPORATION, f/k/a United States Steel Corporation, Plaintiff,

v.

The UNITED STATES and United States International Trade Commission, Defendants,

and

Propulsora Siderurgica, S.A.I.C., Defendant-Intervenor.

Court No. 85–03–00325.

United States Court of International Trade.

June 3, 1987.

See also 655 F.Supp. 487.

USX Corp. (John J. Mangan, J. Michael Jarboe, Craig D. Mallick and Robin K. Capozzi), Pittsburgh, Pa., for plaintiff.

Lyn M. Schlitt, General Counsel, James A. Toupin, Asst. General Counsel and Jack M. Simmons, III, U.S. International Trade Com'n., Washington, D.C., for defendants.

## OPINION AND ORDER

RESTANI, Judge.

Plaintiff moves for access to certain documents identified in List 3A and comprising part of the administrative record in this remanded final negative determination of the International Trade Commission (ITC). The ITC claims that these documents are privileged and seeks a protective order to keep the documents under seal.

The documents at issue are General Counsel memoranda (GCM), also referred to as legal issues memoranda, prepared by the Office of General Counsel for use by the ITC during the course of an investigation. In the past, such documents were routinely made publicly available following the termination of an investigation. More recently, however, the ITC determined that it would no longer waive its claims of privilege to GCM and directed the General Counsel to protect GCM from public disclosure.

Defendants acknowledge that GCM are part of the administrative record,[1] but, citing a portion of the legislation,[2] assert that "[t]here is nothing in the statute or legislative history that remotely suggests any intent on the part of Congress to abrogate any appropriate privilege in documents on the record of the investigation." Defendants' Opposition to Plaintiff's Motion for Access to Privileged Documents [Defendants' Opposition] at 21. While Congress may not have "abrogated" privileges that might otherwise protect documents from disclosure, it is nevertheless possible that Congress has tempered certain privileges by specifically providing for disclosure of privileged documents under such terms and conditions as the court may order. *See* 19 U.S.C. § 1516a(b)(2)(B) (1982); 28 U.S.C. § 2635(b)(2) (1982). *See also* S.Rep. No. 249, 96th Cong., 1st Sess. 248 (1979), U.S. Code Cong. & Admin.News 1979, p. 633 and *Star-Kist Foods v. United States*, 8 CIT 305, 600 F.Supp. 212 (1984) (claim of absolute privilege for state secrets precluded by plain language of statute providing for disclosure under CIT court order) (citing *Ceramica Regiomontana, S.A. v. United States*, 4 CIT 168 (1982) [Available on WESTLAW, DCT database]). Thus, "[t]he proper assertion of privilege is but one factor, albeit a strong factor, for the Court to consider in balancing the conflicting interests involved in disclosure of such documents." *Star-Kist*, 8 CIT at 308, 600 F.Supp. at 216.

Defendants claim that the three GCM at issue are protected by governmental deliberative privilege as well as attorney work product privilege. The deliberative process privilege protects "governmental communications containing advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions are formulated." *United States Steel Corp. v. United*

---

1. The administrative record in judicial reviews of countervailing and antidumping duty proceedings is defined by statute as follows:

the record, unless otherwise stipulated by the parties, shall consist of—

(i) a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, *including all governmental memoranda pertaining to the case* and the record of ex parte meetings required to be kept by section 1677f(a)(3) of this title; ...

19 U.S.C. § 1516a(b)(2)(A) (1982) (emphasis added). *See* 28 U.S.C. § 2635(b)(1)(A) (1982). *See also* S.Rep. No. 249, 96th Cong., 1st Sess. 28, 248 (1979) U.S.Code Cong. & Admin.News 1979, pp. 381, 633 and H.R.Rep. No. 317, 96th Cong.,

1st Sess. 180 (1979) ("all government memoranda pertaining to the case on which the administering authority relied in making determinations.").

2. Defendants cite the first of the following two sentences set forth at 19 U.S.C. § 1516a(b)(2)(B) (1982):

[t]he confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

*See also* 28 U.S.C. § 2635(b)(2) (1982).

*States,* 6 CIT 285, 286, 578 F.Supp. 418, 419 (1983). This privilege has often been applied to "pro and con" statements prepared by the ITC's staff. *Melamine Chemicals v. United States,* 1 CIT 65 (1980), *rev'd on other grounds,* 732 F.2d 924 (Fed.Cir.1984) (reversing subsequent decision on the merits at 5 CIT 116, 561 F.Supp. 458 (1983)).

■ In order for documents to be subject to the deliberative process privilege they must be both pre-decisional and deliberative. *United States Steel,* 6 CIT at 286, 578 F.Supp. at 420. While documents may be pre-decisional and deliberative when originated, they will not be entitled to any deliberative privilege if they are applied by the decisionmakers—as "secret law"—or otherwise expressly adopted or incorporated by reference into the final decision. 6 CIT 286–87, 578 F.Supp. at 420. In addition, factual material contained in deliberative documents also falls outside of the privilege, to the extent that it is severable. *Id.*

■ The GCM at issue were all prepared by the General Counsel's office to aid the ITC in carrying out this court's remand order and contain "legal analysis and advice, opinions and recommendations." Declaration of Gracia M. Berg at paragraphs 14–17. The court has viewed *in camera* the specific GCM at issue and is confident that they were written as pre-decisional and deliberative documents.[3] They do not represent the agency's established policy, procedure or precedent upon which the Commissioners might rely in making their determinations, nor do they contain factual material not available elsewhere.

Nevertheless the ITC could have expressly adopted the documents, incorporated them by reference, or otherwise waived any applicable privilege. Two of the documents, GC–K–049 and GC–K–050, were referenced in the appendix to the ITC determination on remand.[4] Such passing reference merely acknowledged the existence of the documents and did not constitute their express adoption as authority or support for the Commission's determination. A portion of the third document, GC–K–062, however, was read aloud and discussed by one of the Commissioners in a public meeting. That passage is contained in the tape recording included in the public record, was severed and reproduced as a separate document in the public record and is not the subject of any proposed protective order. Similarly, since the court has confirmed defendant's assertion that the documents contain no facts that are not available elsewhere in the record, there is no need to engage in a separate analysis of the status of such material.

■ Having found that the government's deliberative privilege applies to the three documents at issue,[5] to the extent that their content has not already been made available elsewhere in the public record, the court must balance the conflicting interests.[6] In order to gain access to

---

**3.** Defendants argue that *in camera* inspection is unnecessary in this case because the documents, as described in the Berg Declaration, contain privileged material. Defendants' Opposition at 20 n. 12. The Berg Declaration, however, did not establish dispositively the privileged status of the documents. In addition, the declaration provided a basis for plaintiff's concerns regarding the existence of an improper predisposition on the part of the ITC (see *infra* discussion).

**4.** Plaintiff points out that under the introduction to the section of the appendix of the ITC's remanded final negative determination titled "INFORMATION OBTAINED IN THE INVESTIGATION" the following reference is made:

> In addition to the information presented herein, staff comments on the effects and impact of this remand are also contained in GC memoranda GC–K–049 and GC–K–050, both dated March 2, 1987.

**5.** The court's finding of privilege encompasses all three documents and is based entirely upon defendant's claim of governmental deliberative privilege. The court does not reach the issue of whether any work product privilege might also encompass these documents.

**6.** Under a traditional analysis of the government's deliberative privilege, which is a qualified privilege, the court must balance the need for the documents against the harm that would result from disclosure. *Sprague Electric Co. v. United States,* 81 Cust.Ct. 168, 177, 462 F.Supp. 966, 974 (1978). In exercising its discretion to disclose privileged documents under 19 U.S.C. § 1516a(b)(2)(B) and 28 U.S.C. § 2635(b)(2), the court engages in a similar balancing test. *See*

privileged documents, plaintiff "must demonstrate clearly and persuasively that the need for disclosure outweighs the harm that could result from disclosure." *Star-Kist*, 8 CIT at 309, 600 F.Supp. at 217. *See SCM Corp. v. United States*, 82 Cust.Ct. 351, 359 (1979). An actual showing of need must be made.[7]

Plaintiff argues that the description of the documents offered by the ITC "presents the clearest statement as to the specific need for access to these materials." Plaintiff's Memorandum at 15. Plaintiff cites, in part, the following declaration by an attorney in ITC's office of general counsel: "[e]ach of the three memoranda was drafted to aid the Commission in carrying out the remand order of the Court and in anticipation of further legal proceedings by USX challenging the Commission's determination on the remanded investigations," Berg Declaration at paragraph 14, as well as defendants' statement that the documents "discuss what steps the Commission might take to prevail in further proceedings." Defendants' Opposition at 9. Plaintiff concludes that

> if the agency's remand investigation was, in fact, subject to such a negative predisposition, the resulting Remand Determination would not be in accordance with applicable law and would be in blatant disregard to the directives of the Court's [Remand] Order of February 9, 1987. Moreover, based upon the Commission's own statements, it is likely that the List 3A documents would contain the only indication in the record of any such pre-

disposition. A more compelling need for access cannot be imagined.

Plaintiff's Memorandum at 16.

▮▮▮ Before focusing on the documents sought to determine if they contain evidence of an improper predisposition, the court necessarily must consider the question of what is an improper predisposition. When a court remands for reconsideration it avoids resolving the ultimate question in derogation of the agency's statutory duty. *See Federal Communications Commission v. Pottsville Broadcasting*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940) (writ of mandamus quashed because it restricted the agency from reconsidering a licensing determination in accordance with statutory standards); *Federal Power Commission v. Idaho Power Co.*, 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15 (1952) (reviewing court erred in directing the issuance of a license rather than simply declaring the error of law which occurred). Rather, as these cases require, the reconsideration direction compels the statutorily designated decisionmaker to reconsider the matter in the light of its statutory mandate. "According to this 'principle' the agency's original initiative is reactivated free of the accretions of any private interests, expectations or equities." L. Jaffe, *Judicial Control of Administrative Action* 714 (1965). Thus, the agency must consider the matter anew. Neither its prior conclusion nor the interest of the party prevailing upon judicial review governs the outcome. Although, "... '[t]he devil himself knoweth not the mind

---

*West Coast Industries, Inc. v. United States*, 3 CIT 73, 74 (1982) [Available on WESTLAW, DCT database]. Where an absolute privilege is claimed, the court's power to engage in a balancing test would come not from the common law treatment of such privilege, but rather from the statute itself. *See, Star-Kist* and *Ceramica Regiomontana*. On the other hand, where, as here, a qualified privilege is at issue, the court's exercise of its statutory power to disclose privileged documents does not appear to require a separate and additional balance.

**7.** Plaintiff cites cases involving disclosure of confidential, rather than privileged, material in arguing that its need for access is axiomatic. These cases did not apply the standard presently before the court. In *A. Hirsh, Inc. v. United*

*States*, 11 CIT ——, ——, 657 F.Supp. 1297, 1300 (1987) the court stated that plaintiff's need for confidential information was "evident from the nature of the judicial review process" and access "will be granted unless outweighed by 'the public interests in protecting confidential business information ... and inherent in [an agency's] ability to effectively perform its investigative duties under the [antidumping] law." In *Jernberg Forgings Co. v. United States*, 8 CIT 275, 277, 598 F.Supp. 390, 392 (1984) this court stated that "[t]o obtain disclosure of verification exhibits a party is not required to express a particularized need for the data. Nonetheless, the scope of disclosure of confidential data, as in a discovery proceeding, is not boundless. Only material that is relevant to the claims at issue in a case will be released." (citations and footnotes omitted).

of man,' and a modern reviewing court is not much better equipped to lay bare unexposed mental processes," *N.L.R.B. v. Donnelly Garment Co.*, 330 U.S. 219, 229, 67 S.Ct. 756, 761, 91 L.Ed. 854 (1947) (quoting "an early English judge"), implicit in these decisions is the concept that the reviewing court may set aside a determination if it finds the administrative decision-maker prematurely committed in either of the two ways described. As indicated, as a practical matter the burden of showing such unwillingness to reconsider is a difficult one. An administrative body which in connection with its adjudicative or investigative functions has already expressed a view on an issue, is not forbidden from addressing the issue again. *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 702–703, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948). Obviously, courts as well as agencies address similar, if not identical, issues on numerous occasions.[8] Likewise, the same agency officials who previously heard a case are not barred from rehearing the same case upon remand by a court. *Donnelly*, 330 U.S. at 229, 67 S.Ct. at 761.

The system of judicial review which Congress has adopted cannot account for unconscious or unexpressed human tendencies to adhere to prior findings in a particular case. All that the court can require is a good faith effort to reexamine the relevant issue without a conscious commitment to a prior determination of the same factual question. This is the improper predisposition of which plaintiff may complain.

■ In viewing the non-public portions of the documents *in camera* the court has found nothing to support plaintiff's claim of an impermissible "negative predisposition" on the part of the ITC.[9] The documents consist largely of staff musings on the meaning of the court's remand decision and suggestions on how to structure opinions in accordance with the court's instruction. Any discussion of the ITC's prior opinion seems to relate chiefly to avoidance of legal errors. It should also be noted that the GCM relate to Commissioner Rohr's request for legal advice. *See* CO64–K–016, Document No. 82, List No. 1A. Commissioner Rohr's request is in evidence and it reflects an open-minded approach. Although defendant's opposition to plaintiff's motion might not be worded as artfully as possible, the only statement reviewed by the court which evidences a predisposition is the Berg declaration. That document is in plaintiff's possession. (It is also not the statement of a Commissioner.) The court finds no general need inherent in the nature of a judicial review on an administrative record or any specific need for particular documents in this case which outweighs the harm that could result by disclosing privileged governmental deliberations in this case. Plaintiff remains free, of course, to make out a case of improper predisposition from the documents already in its possession, if it can do so.

For the reasons stated above, plaintiff's motion for access to privileged documents identified in List 3A and contained in the ITC's administrative record on remand is denied. Plaintiff's time to respond to ITC's

---

8. We accept readily the concept of legal precedent. It is the application of particular precedent, however, to an individual case which calls for open-minded decision making. This may best be described as a distinction between a preconceived position about law, policy or legislative fact and prejudgment of adjudicative fact. *Compare* 3 K. Davis, *Administrative Law Treatise*, § 19.2 (1980) *with id.* at § 19.4.

9. A portion of document GC–K–062, discussing "what steps the Commission might take to prevail in further proceedings," Defendants' Opposition at 9, has already been made a part of the public record by the Commission as follows:

In order to overcome CIT's criticism, the Commission should endeavor to fully explain both the legal and the factual basis underlying its determination on remand. In light of the *USX* opinion, it is apparent that post-hoc rationalization proffered by counsel for the Commission will be given little weight by the court. Thus as a practical matter, the opinions written in this case should be capable of standing independently.

Public Document 90, List No. 1. Such discussion does not evidence an impermissible motivation underlying ITC's inquiry into "what steps the Commission might take to prevail in further proceedings."

remand determination is extended until June 22, 1987.

SO ORDERED.