**Slip Op. 00-166**

**UNITED STATES COURT OF INTERNATIONAL TRADE**


BEFORE:  RICHARD K. EATON, JUDGE

| | |
|---|---|
| ELKEM METALS CO.; AMERICAN ALLOYS, INC.; APPLIED INDUSTRIAL MATERIALS CORP.; and CC METALS & ALLOYS, INC., | : |
| Plaintiffs/Plaintiff-Intervenors, | : |
| and | : |
| GLOBE METALLURGICAL, INC., | : |
| Plaintiff-Intervenor, | : |
| v. | :   **Consol. Court No. 99-10-00628** |
| UNITED STATES OF AMERICA, | : |
| Defendant, | : |
| and | : |
| FERROATLANTICA DE VENEZUELA; GENERAL MOTORS CORP.; ASSOCIACAO BRASILEIRA DOS PRODUCTORES DE FERROLIGAS E DE SILICO METALICO, et al.; and RONLY HOLDINGS CO., LTD., et al., | : |
| Defendant-Intervenors. | : |

Plaintiff, in action contesting the United States International Trade Commission's ("ITC") reconsideration and reversal of its final affirmative injury determinations in certain antidumping and countervailing duty investigations, moved to disclose documents contained in the administrative record and filed under seal by the ITC.  The United States, on behalf of the ITC, claimed that all undisclosed documents were subject to the deliberative process privilege, and that certain of these documents were also subject to the attorney work product and

attorney–client privileges.  The United States Court of International Trade, after conducting an in camera review of the documents in question, held:  (1) procedurally, the deliberative process privilege was properly asserted by the ITC; (2) certain items at issue were properly undisclosed and would remain under seal, while other items would be disclosed because the deliberative process privilege did not apply to them; and (3) those items as to which the attorney work product and attorney–client privileges had been asserted would remain under seal, as Plaintiff had not challenged the ITC's assertion of these privileges.

[Plaintiff's motion granted in part and denied in part.]

Dated:  December 20, 2000

*Baker & Botts* (*Kirk K. Van Tine*); *Eckert Seamans Cherin & Mellott* (*Mary K. Austin*), for Plaintiff Elkem Metals Company.

*Lyn M. Schlitt*, General Counsel, U.S. International Trade Commission; *James A. Toupin*, Assistant General Counsel, U.S. International Trade Commission (*Michael Haldenstein*), for Defendant.

## MEMORANDUM OPINION AND ORDER

**EATON, JUDGE**:  Before the Court is Plaintiff Elkem Metals Company's ("Elkem")

"Motion to Compel Production of Documents" contained in the administrative record ("Record")

and filed under seal by the United States International Trade Commission ("ITC") in this

consolidated action.  For the reasons set forth below, Elkem's motion is granted, in part, and

denied, in part.

## BACKGROUND

This action contests the ITC's reconsideration and reversal of its final affirmative injury

determinations in countervailing duty investigation No. 303-TA-23 (Final), concerning

ferrosilicon from Venezuela, and antidumping investigations Nos. 731-TA-566–570 and 731-

TA-641 (Final), concerning ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and

Venezuela.  On December 13, 1999, the ITC filed the Record.  The Record is composed of

several certified lists which catalog the various documents that the ITC reviewed in rendering its

reconsideration determinations.  The current controversy surrounds the disclosure of items[1]

contained in several documents set forth on Certified List No. 3, specifically, documents

numbered 9, 10, 16, 18, 19, and 25.[2]  (Pl.'s Mem. Supp. Mot. Compel at 8.)  The ITC filed these

documents under seal pursuant to USCIT R. 71(c).


The United States ("Government"), on behalf of the ITC, asserts as the basis for the non-

disclosure of these documents the deliberative process privilege and, with respect to certain

documents, the attorney work product and attorney–client privileges.  The Government argues

that the deliberative process privilege has been properly asserted (Def.'s Mem. Opp'n to Mot.

Compel at 3), and that the documents at issue contain "legal and other types of advisory

opinions, conclusions, considerations, deliberations, advice and recommendations prepared by

Members of the Commission's staff, or contain comments or interlineations reflecting the

deliberative process of the individual Commissioners."  (Id. at 9 (citation omitted).)  The

Government further contends that the allegedly privileged documents were prepared in

confidence, contain facts that can be obtained elsewhere in the Record, were not incorporated

into the ITC's reconsideration determinations, and have not been disclosed to persons outside the

---

[1]    The Court refers to the individual memoranda, vote sheets, drafts, or other papers comprising each document as an "item."

[2]    In its Motion to Compel Production of Documents, Elkem also requested the disclosure of document No. 48 on Certified List No. 2.  (Pl.'s Mem. Supp. Mot. Compel at 8.) However, as the ITC subsequently disclosed this document, it is no longer at issue.  (Pl.'s Notice Receipt Doc. at 1.)

agency.  (Id. at 9–10.)  Finally, the Government argues that disclosure of the factual information

contained in these documents would be prejudicial because it would inadvertently expose the

Commissioners' deliberative process.  (Id. at 10.)


Elkem counters that the Government failed to establish a "legal basis for withholding" the

documents (Pl.'s Mem. Supp. Mot. Compel at 8) and that the documents do not qualify for

protection under the deliberative process privilege because they are procedural and contain

factual material that fails to "implicate the policy-making concerns that the privilege is intended

to protect."  (Pl.'s Reply Mem. Supp. Mot. Compel at 2.)  Elkem also argues that its need for the

information contained in the undisclosed documents outweighs the ITC's need for non-

disclosure.  (Id. at 11.)  Finally, Elkem states that it does not challenge the ITC's assertion of the

attorney work product and attorney–client privileges.  (Id. at 2.)


## DISCUSSION

### I.        The Deliberative Process Privilege

The deliberative process privilege, also referred to as the "executive privilege," protects

the "decision making processes of government agencies."  NLRB v. Sears, Roebuck & Co., 421

U.S. 132, 150 (1975) (quoting Tennessean Newspapers, Inc. v. Fed. Hous. Admin., 464 F.2d

657, 660 (6th Cir. 1972)); see also USX Corp. v. United States, 11 CIT 419, 420, 664 F. Supp.

519, 521 (1987) (citing United States Steel Corp. v. United States, 6 CIT 285, 286, 578 F. Supp.

418, 419 (1983)).  The three primary purposes of the privilege are:

> [1] to assure that subordinates within an agency will feel free to
> provide the decisionmaker with their uninhibited opinions and

> recommendations without fear of . . . criticism; [2] to protect
> against premature disclosure of proposed policies before they have
> been . . . adopted; and [3] to protect against confusing the issues
> and misleading the public by dissemination of documents
> suggesting reasons and rationales for a course of action which were
> not in fact the ultimate reasons for the agency's action.

Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (citing Jordan

v. United States Dep't of Justice, 591 F.2d 753, 772–73 (D.C. Cir. 1978)).  In the instant case,

the Court is presented solely with the first of these concerns, i.e., the protection of documents

reflecting the communications, advisory opinions, drafts, recommendations, and deliberations

prepared prior to, and in connection with, the rendering of a final agency decision.  See Coastal

States Gas, 617 F.2d at 866; see also NEC Corp. v. United States Dep't of Commerce, 21 CIT

198, 211, 958 F. Supp. 624, 636 (1997) (citing Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40

F.R.D. 318, 324 (D.D.C. 1966), aff'd, 384 F.2d 979 (D.C. Cir. 1967)).


     For the deliberative process privilege to apply to a document, the court must find that two

requirements have been satisfied.  The first, or procedural, requirement demands that:  (1) the

privilege be asserted by the highest ranking member of the government agency or his or her

designated subordinate, see Mobil Oil Corp. v. Dep't of Energy, 520 F. Supp. 414, 416

(N.D.N.Y. 1981); and (2) such individual submit an affidavit sufficiently describing the

documents.  See Asahi Chem. Indus. Co. v. United States, 1 CIT 21, 23 (1980) (citing SCM

Corp. v. United States, 82 Cust. Ct. 351, 356–57, 473 F. Supp. 791, 796–97 (1979)); see also

Mobil Oil, 520 F. Supp. at 416 (stating that affidavit must describe in detail the information the

agency seeks to protect and that conclusory descriptions will not suffice).

The second, or substantive, requirement demands that the documents at issue be both "predecisional" and "deliberative." See Torres v. City Univ. of New York, No. 90 Civ. 2278 (CSH), 1992 U.S. Dist. LEXIS 18546, at *22–23 (S.D.N.Y. Dec. 3, 1992); see also USX Corp., 11 CIT at 420, 664 F. Supp. at 522. A document is predecisional if generated prior to the adoption of an agency policy and "prepared in order to assist an agency decisionmaker in arriving at his decision." Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). Any document generated after an agency decision, in an attempt to explain that decision, is not protected. See Hinsdale v. City of Liberal, No. 96-1249-FGT, 1997 U.S. Dist. LEXIS 13779, at *3 (D. Kan. Aug. 27, 1997). A document is deliberative if it "'reflects the give-and-take of the consultative process' by revealing the manner in which the agency evaluates possible alternative policies or outcomes." City of Virginia Beach v. United States Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993) (quoting Coastal States Gas, 617 F.2d at 866). To determine whether this "give-and-take" is present, courts examine whether the document is related to the "process by which governmental decisions and policies are formulated," Hopkins, 929 F.2d at 84 (quoting Sears, 421 U.S. at 150), or whether disclosure would impair the "uninhibited and frank internal discussion in the formulation of governmental policy and decisionmaking." SCM Corp., 82 Cust. Ct. at 357, 473 F. Supp. at 797.

The deliberative process privilege thus includes the "work product of such decision-making processes: . . . memos, expert reports, preliminary drafts, [and] the oral testimony of the decision makers as to the basis for their opinions." KFC Nat'l Mgmt. Corp. v. NLRB, 497 F.2d

298, 305 (2d Cir. 1974). Moreover, the privilege extends to the deliberative process of agency commissioners. "[T]here is a great need to preserve the free flow of ideas between Commissioners. . . . Congress expressly indicated that intra-agency communications of thoughts and opinions are to be protected, and nowhere is that protection more needed than between the ultimate decision-makers within an agency." Sterling Drug, Inc. v. FTC, 450 F.2d 698, 708 (D.C. Cir. 1971). Thus, courts have consistently observed that "[t]he judiciary, . . . is not authorized 'to probe the mental processes' of an executive or administrative officer." NEC Corp., 21 CIT at 211, 958 F. Supp. at 636 (quoting Carl Zeiss Stiftung, 40 F.R.D. at 325).

The deliberative process privilege is not, however, absolute. Documents will not be protected from disclosure if their content reflects an attempt by the agency to establish "secret law" or policies that are not subject to public scrutiny. See Sears, 421 U.S. at 153; see also Sterling Drug, 450 F.2d at 708 ("[T]o prevent the development of secret law within the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it."); USX Corp., 11 CIT at 420–21, 664 F. Supp. at 522. Furthermore, a document that is deliberative is not protected "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Arthur Andersen & Co. v. IRS, 679 F.2d 254, 258 (D.C. Cir. 1982) (quoting Coastal States Gas, 617 F.2d at 866); see also Sears, 421 U.S. at 161; USX Corp., 11 CIT at 421, 664 F. Supp. at 522. Finally, even if the privilege is found to apply, a court may still order disclosure of the deliberative material if the party seeking the information can demonstrate that its need for disclosure of such material is greater than the government's interest in non-disclosure. See Star-Kist Foods, Inc. v. United

States, 8 CIT 305, 309, 600 F. Supp. 212, 217 (1984) ("Once the proponent of privilege has complied with the established criteria for asserting privilege, the opposing party must demonstrate clearly and persuasively that the need for disclosure outweighs the harm that could result from disclosure.") (citing Melamine Chem., Inc. v. United States, 1 CIT 65, 66 (1980)).

### A.     Application of the Deliberative Process Privilege to the Documents in Dispute

The Court has, pursuant to its decision in Elkem Metals Co. v. United States, 24 CIT __, Slip Op. 00-41 (April 17, 2000), conducted an in camera review of the documents that the ITC claims are privileged.  The Court finds that the ITC has satisfied the procedural requirement for properly invoking the deliberative process privilege by means of the affidavit of Marcia E. Miller, the Vice Chairman[3] of the ITC ("Miller Aff."), which provides, in adequate detail, a description of each of the documents filed under seal.

The Court turns now to the substantive prong of the deliberative process privilege.  The Court notes that a determination with regard to the deliberative process privilege is complicated somewhat by the manner in which the ITC carries out its decision-making functions.  Some of the ITC's work is accomplished by the circulation, among its Commissioners, of Action Jackets, and the approval or disapproval of their contents by means of "sequential notational voting."[4]

---

[3]     A Vice Chairman's review and subsequent submission of an affidavit asserting the deliberative process privilege is sufficient in situations, such as that presented in the case at bar, where the Chairman is unavailable.  See 19 U.S.C. § 1330(c)(4) (1994).

[4]     Sequential notational voting is a procedure employed by large multi-member governmental agencies, such as the ITC, which conforms with the open meeting requirement of the Sunshine Act, 5 U.S.C. § 552b.  See R.R. Comm'n of Texas v. United States, 765 F.2d 221,

Typically, each Action Jacket claimed as privileged in the case at bar contains a draft document, some explanatory material, and an Action Jacket Approval Record, or vote sheet ("Approval Record"), on which the Commissioners indicate whether they will support or reject adoption of the relevant item(s). In some instances, the Approval Records, as well as other items contained in the Action Jackets, bear the Commissioners' notations with respect to desired additions or deletions to an item, or the circumstances upon which their approval is conditioned. Since the items contained in Action Jackets are prepared by the ITC staff and circulated within the ITC, and since the Commissioners' notations made on the Approval Records constitute communications between the Commissioners and the staff, as well as among the Commissioners themselves, they constitute the kind of "give-and-take" protected by the deliberative process privilege. See Sterling Drug, 450 F.2d at 708; see also City of Virginia Beach, 995 F.2d at 1253; Coastal States Gas, 617 F.2d at 866. Moreover, as none of the actions contemplated by the circulation of the Action Jackets are final until approved at an open meeting, see 19 C.F.R. § 201.34(a)(2) (1999), the use of such a procedure does not contribute to the establishment of "secret law." See USX Corp., 11 CIT at 421, 664 F. Supp. at 522.

---

230 (D.C. Cir. 1985). An Action Jacket is a form of sequential notational voting. The use of Action Jackets allows the ITC Commissioners to act on agency matters individually, instead of deliberating and voting as a group during an open agency session. This manner of voting is consistent with the Sunshine Act, even though no formal agency meeting is held. See id. ("The Sunshine Act does not require that meetings be held in order to conduct agency business; rather, that statute requires only that, if meetings are held, they be open to the public." (citing Common Cause v. Nuclear Regulatory Comm'n, 674 F.2d 921, 935 n.42 (D.C. Cir. 1982))); see also Communications Sys., Inc. v. FCC, 595 F.2d 797, 800 (D.C. Cir. 1978) ("It thus clearly appears from the legislative history that Congress intended to permit agency members to act on agency business that is circulated to them 'sequentially in writing.'").

### 1.      Document No. 9

Document No. 9 contains three items.  The first item (pages one through three)[5] consists

of three identical copies of an Approval Record.  This Approval Record bears the individual

votes of the ITC Commissioners with respect to the reconsideration of the ITC's injury

determination regarding ferrosilicon from Brazil.  While the ITC claims that this Approval

Record is protected by the deliberative process privilege because it "contains written comments

reflecting the deliberative process of the Commission" (Miller Aff. ¶ 3), it contains only the

Commissioners' votes.  This item is not protected by the deliberative process privilege because it

has already been disclosed to Elkem (Miller Aff. Attach.), and thus "used by the agency in its

dealings with the public."  Arthur Andersen, 679 F.2d at 258.  Therefore, it shall be disclosed.

The ITC's claim of privilege with respect to the remaining two items (page four and

pages five through thirteen, respectively) will be addressed in Section II, infra.

### 2.      Document No. 10

Document No. 10 contains four items.  The ITC has not claimed that the first and second

items are privileged and they have been disclosed.  (Miller Aff. ¶ 3.)  The ITC's claim of

privilege with respect to the third item (pages fourteen through nineteen) will be addressed in

Section II, infra.

---

[5]      The Court has numbered the pages of each document in the order in which they were submitted by the ITC for in camera review.  Thus, the Court refers to the first page of document No. 9 as "page one," and the last page of document No. 25 as "page 225."

The fourth item (pages twenty through twenty-three) is a draft determination prepared by the ITC Secretary relating to a request for institution of an investigation. This item is protected by the deliberative process privilege because drafts of final agency decisions submitted by a subordinate to a multi-member agency are both predecisional and deliberative in nature. Moreover, neither this draft nor significant portions thereof were adopted by the agency. Thus, this item remains protected by the deliberative process privilege and shall not be disclosed.

### 3.      Document No. 16

Document No. 16 contains nine items concerning ITC decisions that were published in the Federal Register. The first item (page twenty-four) is an Approval Record bearing the votes and written comments of several ITC Commissioners in response to two proposed draft decisions. The comments on this Approval Record reveal the grounds upon which the Commissioners conditioned their votes. Thus, since these comments are both predecisional, because they were made before adoption of the item, and deliberative, because they reflect the give-and-take of the decision-making process, they are protected by the deliberative process privilege. A redacted version of this item, bearing only the Commissioners' votes, has been disclosed to Elkem. (Miller Aff. Attach.) As the redacted version of this item has been "used by the agency in its dealings with the public," Arthur Andersen, 679 F.2d at 258, it is not protected by the deliberative process privilege. Therefore, this item, in its redacted form, shall be disclosed.

The second item (pages twenty-five through twenty-eight) is a draft of a dismissal of a request for a section 751(b) review investigation. This item contains numerous handwritten edits. The final version of this item was published in the Federal Register. See Silicon Metal From Argentina, Brazil, and China; Dismissal of Request for Institution of Section 751(b) Review Investigation, 63 Fed. Reg. 52,289 (September 30, 1998). Because this item contains edits, some of which do not appear in the final version of the ITC's decision, its disclosure could expose the give-and-take of the ITC's decision-making process. Therefore, this item remains subject to the privilege and shall not be disclosed.

The third item (pages twenty-nine through thirty-one) is a draft of the ITC's issuance of a schedule for the conduct of its changed circumstances reviews. The final version of this draft was also published in the Federal Register. See Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, 63 Fed. Reg. 52,288 (September 30, 1998). The differences between the draft and the final published version pertain to filing and scheduling dates. As these differences do not reflect the give-and-take of the ITC's decision-making process, the deliberative process privilege does not apply to this item. Furthermore, the ITC has waived any right to assert the privilege as to the significant portions of this item that have been published in the Federal Register. Accordingly, this item shall be disclosed.

The fourth item (page thirty-two) is a draft of a proposed work schedule. This item, which contains handwritten edits, identifies various advisors to the ITC and sets subsequent briefing, hearing, filing, and publication dates. It shall be disclosed for two reasons. First,

several of the dates on the work schedule, including the handwritten edits, were incorporated into the final published schedule, see Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, 63 Fed. Reg. at 52,288, thus waiving the privilege through public disclosure. Second, no part of this item is truly deliberative. In other words, the disclosure of this item would not reveal ITC deliberations "in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Maricopa Audubon Soc'y v. United States Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997) (quoting Assembly of California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992)). Therefore, this item shall be disclosed.

The fifth item (page thirty-three) is a memorandum containing the recommendation and comments of the ITC's Director of the Office of Investigations regarding an accompanying proposed draft of a Federal Register notice and a proposed work schedule. This item is privileged because it contains the unpublished recommendations of an ITC subordinate which pertain to an eventual ITC determination, and thus shall not be disclosed.

The disclosure of the sixth item (pages thirty-four through thirty-seven) will be discussed in Section II, infra.

The seventh item (pages thirty-eight through forty-one) is a proposed draft of the ITC's dismissal of a request for institution of a section 751(b) investigation. Large portions of this draft were incorporated into a final decision which was published in the Federal Register. See

Silicon Metal From Argentina, Brazil, and China; Dismissal of Request for Institution of a

Section 751(b) Review Investigation, 63 Fed. Reg. at 52,289.  The only significant difference

between the draft and the final version is the exclusion in the published decision of the "Validity

of data" paragraph contained in the draft.  As this paragraph constitutes predecisional draft

material that was not incorporated into the final decision, it is covered by the privilege.

However, the remaining portions of this draft shall be disclosed since they were adopted by the

ITC in its final determination.

The eighth item (pages forty-two through forty-four) is another copy of the draft schedule

identified as item three (pages twenty-nine through thirty-one).  Thus, for the reasons previously

stated, this item is not protected by the deliberative process privilege and shall be disclosed.

The ninth and final item in document No. 16 (page forty-five) is another proposed work

schedule.  This item incorporates the edits made to the proposed work schedule identified as item

four (page thirty-two), and shall be disclosed for the same reasons.  First, the privilege has been

waived because the briefing, hearing, and deadline dates which appear on this item were

incorporated into the ITC's final published schedule, see Ferrosilicon From Brazil, China,

Kazakhstan, Russia, Ukraine, and Venezuela, 63 Fed. Reg. at 52,288, and have, in fact, been

disclosed by virtue of their having occurred.  Second, this item is primarily composed of

scheduling information whose disclosure would not expose the ITC's deliberative process or

discourage candid discussions within the agency.  Therefore, this item shall be disclosed.

### 4.      Document No. 18

The first item in document No. 18 (page forty-six) is an Approval Record bearing the votes and written comments of the ITC Commissioners in response to a set of draft questionnaires.  As previously discussed, the Commissioners' predecisional comments on an Approval Record are protected by the deliberative process privilege.  A redacted version of this item, bearing only the Commissioners' votes, has been disclosed to Elkem.  (Miller Aff. Attach.)  The redacted version of this item is not, therefore, protected by the deliberative process privilege.  Thus, this item, in its redacted form, shall be disclosed.

The second item (page forty-seven) is a memorandum from one ITC Commissioner to the others regarding the above-mentioned questionnaires.  This item is protected by the privilege because it is both predecisional and deliberative, and shall not be disclosed.

The third item (pages forty-eight through fifty) consists of a memorandum and two accompanying copies of a proposed draft question prepared by the Director of the Office of Investigations for review by the ITC.  The copies of the draft question bear the handwritten notes and comments of one of the Commissioners.  This item is protected by the deliberative process privilege because the memorandum contains predecisional advisory material submitted to the ITC by a subordinate and because the draft question contains the predecisional comments of a Commissioner.  Therefore, this item shall not be disclosed.

The fourth item (page fifty-one) is a memorandum containing the recommendation and comments of the Director of the Office of Investigations. As the memorandum contains predecisional advisory material submitted to the ITC by a subordinate, it is protected by the privilege and shall not be disclosed.

The fifth (pages 52–104), sixth (pages 105–43), seventh (pages 144–81), and eighth (pages 182–214) items are, respectively, proposed draft questionnaires for U.S. producers, U.S. importers, U.S. purchasers, and foreign producers of ferrosilicon. These draft questionnaires contain handwritten edits. As these edits are predecisional and could reveal the decision-making process of the ITC, they are protected by the privilege. Therefore, these items shall not be disclosed.

### 5.    Document No. 19

Document No. 19 is composed of five items that relate to a revised work schedule. The final version of this revised work schedule was published in the Federal Register. See Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, 63 Fed. Reg. 67,917 (December 9, 1998).

The first item (page 215) is an Approval Record bearing the votes and comments of the ITC Commissioners. As previously discussed, the predecisional deliberative comments of individual Commissioners are protected from disclosure. A redacted version of this Approval Record, bearing only the Commissioners' votes, has been disclosed to Elkem. (Miller Aff.

Attach.)  The redacted version of this item is not, therefore, protected by the deliberative process privilege.  Thus, this item, in its redacted form, shall be disclosed.

The second item (page 216) is a draft of the revised work schedule.  This item is an internal communication generated by an ITC subordinate to assist the Commissioners in drafting the revised investigation schedule that was eventually published in the Federal Register.  This draft does not contain any substantive advisory material, but simply lists various proposed filing and scheduling dates.  Because this item concerns scheduling information that does not pertain to the substantive issues in this case, its disclosure will not threaten the candid nature of future ITC deliberations.  Consequently, this item is not protected by the deliberative process privilege and shall be disclosed.

The third item (page 217) is a memorandum containing the recommendation and comments of the Director of the Office of Investigations relating to the draft work schedule and Federal Register notice.  As this item contains predecisional advisory material, it is protected by the privilege and shall not be disclosed.

The fourth item (page 218) is another draft notice of the revised work schedule that was subsequently published in the Federal Register.  The differences between this draft and the final version are limited to scheduling dates and the order in which such dates are presented in the second paragraph of the section entitled "Supplementary Information."  As these differences pertain to non-substantive information, and because the majority of the information contained in

this item was incorporated into the published work schedule, the deliberative process privilege does not apply. Therefore, this item shall be disclosed.

The fifth item (page 219) is another draft of the revised work schedule. This item simply lists scheduling dates. Therefore, because this item does not contain any substantive advisory material which would expose the ITC's decision-making process, it is not protected by the deliberative process privilege and shall be disclosed.

### 6.     Document No. 25

The items contained in document No. 25 pertain to the drafting of the notice of the ITC's determinations on reconsideration. See Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, 64 Fed. Reg. 47,865 (September 1, 1999).

The first item (page 220) is an Approval Record bearing the votes and comments of the ITC Commissioners. As previously discussed, the predecisional comments of individual Commissioners are protected from disclosure by the deliberative process privilege. A redacted version of this item, bearing only the Commissioners' votes, has been disclosed to Elkem. (Miller Aff. Attach.) This item, in its redacted form, is not, therefore, protected by the deliberative process privilege and shall be disclosed.

The second item (page 221) is a page from a draft of the ITC's notice of its final determinations on reconsideration. This draft contains a handwritten edit pertaining to the views

of one of the Commissioners.  As disclosure of this item would expose the give-and-take of the

decision-making process, it is protected by the privilege and shall not be disclosed.


The third item (page 222) is a copy of the Approval Record identified as item one (page

220).  However, this copy was made before circulation of the Approval Record among the entire

ITC panel and thus bears only the vote and comments of the ITC Chairman.  As previously

discussed, a Commissioner's predecisional comments on an Approval Record are protected by

the deliberative process privilege.  Furthermore, as noted, a redacted version of item one has been

disclosed to Elkem.  Therefore, item three shall be redacted in conformance with the previously

disclosed redacted version of item one, and shall, in its redacted form, be disclosed.


The fourth item (page 223) is a memorandum containing the recommendation and

comments of the Director of the Office of Investigations in connection with the draft

determinations.  This item contains predecisional advisory material and is protected by the

privilege.  Therefore, it shall not be disclosed.


The fifth item (pages 224–25) is another portion of the draft of the ITC's notice of its

final determinations on reconsideration.  This item shall be disclosed since its entire content was

published in the Federal Register.

### B.        Plaintiff's Need for Disclosure of Privileged Documents

Elkem has not advanced a convincing argument in support of its stated need for any of the

privileged documents.  To overcome a valid assertion of the deliberative process privilege, a

proponent must demonstrate "clearly and persuasively" that its need for the information

outweighs the competing need of the government with respect to non-disclosure.  See Star-Kist

Foods, 8 CIT at 309, 600 F. Supp. at 217.  Courts weigh several factors in determining whether a

proponent of disclosure has demonstrated a clear and persuasive need for privileged documents.

These factors include:  "(i) the relevance of the evidence sought to be protected; (ii) the

availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv)

the role of the government in the litigation; and (v) the possibility of future timidity by

government employees who will be forced to recognize that their secrets are violable."  Torres,

1992 U.S. Dist. LEXIS 18546, at *23 (citing In re Franklin Nat'l Bank Secs. Litig., 478 F. Supp.

577, 583 (E.D.N.Y. 1979) (internal citations omitted)).


Here, Elkem has not tipped the balance in its favor.  Elkem's sole argument for disclosure

is that the ITC's need for confidentiality is diminished by the fact that it wrote an "after the fact

decision" that violates the "integrity of the decision-making process."  (Pl.'s Reply Mem. Supp.

Mot. Compel at 12.)  This argument does not address Elkem's individual need for disclosure, but

rather attacks the basis of the ITC's negative injury determinations on reconsideration.  Elkem's

allegations concerning the integrity of the ITC's determinations are not relevant to the question

of whether its own need for disclosure of the privileged documents outweighs the competing

need of the ITC with respect to non-disclosure.  Because Elkem's allegations do not implicate

any of the above-mentioned factors, the Court concludes that Elkem has not persuasively demonstrated a need for disclosure of the privileged documents. Consequently, the documents found by the Court herein to be covered by the deliberative process privilege remain protected and shall not be disclosed.

## II.    The Attorney Work Product and Attorney–Client Privileges

The ITC has, for the remaining items at issue, invoked the attorney work product and attorney–client privileges in addition to the deliberative process privilege. Specifically, the ITC claims that the attorney work product and attorney–client privileges apply to: (1) the second and third items in document No. 9 (page four and pages five through thirteen, respectively), which consist of a recommendation of the ITC's General Counsel concerning the institution of reconsideration proceedings and an attached memorandum; (2) the third item in document No. 10 (pages fourteen through nineteen), consisting of a memorandum and draft notice prepared by the Director of the Office of Investigations; and (3) the sixth item in document No. 16 (pages thirty-four through thirty-seven), consisting of a memorandum from the Director of the Office of Investigations.

As previously noted, Elkem does not challenge the ITC's assertion of the attorney work product and attorney–client privileges as to the above-mentioned items. Therefore, they shall not be disclosed.

**CONCLUSION**

For all of the foregoing reasons, it is hereby

**ORDERED** that the "Validity of data" paragraph (at page forty-one) shall be redacted from item 7 (pages thirty-eight through forty-one) in document No. 16 on Certified List No. 3; and it is further

**ORDERED** that the following items in the following documents on Certified List No. 3 shall be redacted in conformance with the attachments to the Miller Affidavit: item 1 (page twenty-four) in document No. 16; item 1 (page forty-six) in document No. 18; item 1 (page 215) in document No. 19; and item 1 (page 220) in document No. 25; and it is further

**ORDERED** that item 3 (page 222) in document No. 25 on Certified List No. 3 shall be redacted in conformance with the redacted version of item 1 in document No. 25 on Certified List No. 3, which is set forth as an attachment to the Miller Affidavit; and it is further

**ORDERED** that the following items, or redacted versions thereof, in the following documents on Certified List No. 3 are not privileged and shall be disclosed to Plaintiff Elkem:

    (a)    item 1 (pages one through three) in document No. 9; items 3 (pages twenty-nine through thirty-one), 4 (page thirty-two), 8 (pages forty-two through forty-four), and 9 (page forty-five) in document No. 16; items 2 (page 216), 4 (page 218), and

5 (page 219) in document No. 19; and item 5 (pages 224–25) in document No. 25;

and

(b)     the redacted versions of:  items 1 and 7 in document No. 16; item 1 in document

No. 18; item 1 in document No. 19; and items 1 and 3 in document No. 25; and it

is further

**ORDERED** that the following items, or redacted portions thereof, in the following

documents on Certified List No. 3 are covered by the deliberative process privilege and shall

remain under seal and shall not be disclosed to Plaintiff Elkem:

(a)     item 4 (pages twenty through twenty-three) in document No. 10; items 2 (pages

twenty-five through twenty-eight) and 5 (page thirty-three) in document No. 16;

items 2 (page forty-seven), 3 (pages forty-eight through fifty), 4 (page fifty-one), 5

(pages 52–104), 6 (pages 105–43), 7 (pages 144–81), and 8 (pages 182–214) in

document No. 18; item 3 (page 217) in document No. 19; and items 2 (page 221)

and 4 (page 223) in document No. 25; and

(b)     the redacted portions of:  items 1 and 7 in document No. 16; item 1 in document

No. 18; item 1 in document No. 19; and items 1 and 3 in document No. 25; and it

is further

**ORDERED** that the following items in the following documents on Certified List No. 3,

as to which the ITC's assertion of the attorney work product and attorney–client privileges is

unchallenged, shall remain under seal and shall not be disclosed to Plaintiff Elkem:  items 2

(page four) and 3 (pages five through thirteen) in document No. 9; item 3 (pages fourteen

through nineteen) in document No. 10; and item 6 (pages thirty-four through thirty-seven) in

document No. 16.

_____
                                                            Richard K. Eaton, Judge

Dated:  December 20, 2000
            New York, NY